FREDERICK B. MANDEVILLE

*v.*

GEORGE W. HARMAN.

1. Contracts in restraint of trade are invalid, and this is so even when the restraint imposed is partial, unless the restraint be reasonable.

2. And the test to be applied, in determining whether a restraint is reasonable or not, is to consider whether the restraint is only such as is necessary to afford a fair protection to the interest of the party in whose favor it is given, and not so large as to interfere with the interest of the public.

3. The question whether a restraint, which is to endure during the life of the promisor or covenantor, is reasonable or not, is an undecided question in this state, and such a restraint is not, therefore, enforceable by injunction.

Mandeville *v.* Harman.

4. A complainant is not entitled to a preliminary injunction when the right on which he founds his claim is, as a matter of law, unsettled.

On application for an injunction, heard on bill and affidavit and answer and affidavit and order to show cause.

*Mr. Joseph Coult,* for complainant.

*Mr. John R. Emery,* for defendant.

VAN FLEET, V. C.

This is an application for an injunction to restrain the defendant from violating his covenant. The litigants are physicians. The bill says that the complainant, by many years' practice and diligent attention to·business, has succeeded in acquiring a large and profitable practice, and that in the early part of 1885 his practice became so large as to render it necessary for him to em-

NOTE.—The good-will of a surgeon, it has been held, survives to his partner, *Farr* v. *Pearce, 3 Madd. 75.* See *14 Am. Law Reg. (N. S ) 1, 329, 649, 713;* and how its value is estimated, *Austen* v. *Boys, 2 De G. & J. 626;* see *S. C., 3 Jur. (N. S.) 1284, 4 I d. 719; Mellersh* v. *Kee, 24 Beav. 453; Rammelsburg* v. *Mitchell, 29 Ohio St. 22.*

It may be assigned, *Jacoby* v. *Whitmore, 49 L. T. (N. S.) 335; England* v. *Downs, 6 Beav. 269; Drake* v. *Dodsworth, 4 Kan. 159; Guerand* v. *Daudelet, 32 Md. 561; Hedge* v. *Lowe, 47 Iowa 137; Beard* v. *Dennis, 6 Ind. 200; Morgan* v. *Perhamus, 36 Ohio St. 517; Roller* v. *Ott, 14 Kan. 609;* see *Candler* v. *Candler, 2 Jac. 225; Thornbury* v. *Bevill, 1 Y. & C., Ch. 554; Elves* v. *Crofts, 10 C. B. 241; Jerome* v. *Bigelow, 66 Ill. 452; Holmes* v. *Caldwell, 8 Rich. 247;* or released, *Gompers* v. *Rochester, 56 Pa. St. 194.*

Physicians' and surgeons' contracts not to practice their professions have been held valid in the following instances: for fourteen years, within ten miles, *Davis* v. *Mason, 5 T. R. 118;* at any time, within seven miles, *Sainter* v. *Ferguson, 7 C. B. 716;* at any time, within two and a half miles, *Atkyns* v. *Kinnier, 4 Exch. 776;* at W., or within twelve miles thereof, without plaintiff's consent, during plaintiff's lifetime, or within ten years after his decease, *Fox* v. *Scard, 33 Beav. 327;* so long as R. G., or his successors, should carry on business at N., or within ten miles thereof, *Gravely* v. *Barnard, 43 L. J. (Ch.) 659; S. C., L. R. (18 Eq.) 518;* an action on the case for fraud was held to lie by the purchaser of a physician's practice, who had represented himself to be a regular practitioner, and evidence to show that it was irregular and eclectic was held admissible, *Bradbury* v. *Bardin, 35 Conn. 577;* one about to remove

Mandeville v. Harman.

ploy an assistant, and that the defendant became his assistant, under a written contract, executed under seal, on the 22d day of April, 1885. By the contract the defendant bound himself to devote his time and attention to the business of the complainant, and to give thereto all his skill and ability for the period of three months, at a compensation of $125, and the one-fourth of such sum as the complainant's income from his practice, for the three months that the defendant was to serve him, should exceed his average income for the months of July, August and September in the three preceding years. The contract gave the complainant the option, on the expiration of the first three months, to extend the defendant's term of service, at the same rate of compensation, to the 22d of April, 1886. The complainant exercised this option, and the defendant continued to serve under the agreement until the 22d of April, 1886. On that day a further written agreement was made and endorsed on the original agreement, by which the defendant's term of service was extended

from a village agreed, in consideration of $500, to sell defendant his practice, and to recommend him to his patrons, and to use his influence in his favor, reserving the right to practice in the village when called on to do so.—*Held*, that he could recover the $500 from the defendant, *Hoyt* v. *Holly, 39 Conn. 326 ;* " not to locate with a view of resuming his profession, within a circle of thirty miles around T.," *Mell* v. *Moony, 30 Ga. 413* (approved in *Goodman* v. *Henderson, 58 Ga. 570*); a sale of a house and practice, with a condition " not to establish, nor to attempt to establish, a medical practice within the aforesaid township of Chili, nor within six miles of" the house, *Linn* v. *Sigsby, 67 Ill. 75 ;* a similar sale, with a condition not to practice in the town or within fifteen miles thereof, " by himself, agent or otherwise," *Miller* v. *Elliott, 1 Ind. 484 ;* a sale of land and a practice, with a stipulation not to resettle in M., so long as the plaintiff should be located there, allows the vendor to practice, but not to reside there, *Haldeman* v. *Simonton, 55 Iowa 144 ;* a sale of W.'s " good-will of practice, * * * said W. to quit the practice in favor of B.," the purchaser, was construed to include the territory over which W.'s practice had extended, which could be established by parol; and that B.'s failure to pay one of the notes which made up the consideration could be shown in mitigation of B.'s damages, but not as a proof of his abandonment or rescission of the contract, *Warfield* v. *Booth, 33 Md. 63 ;* a guaranty by the vendor " that no other physician, for the space of four years, will establish himself in this place, as a competitor, unless the increased population of the place should warrant it," or unless through the purchaser's fault, and agreeing, in the former event, to refund the purchase-money, is valid, *Gilman* v. *Dwight,*

Mandeville *v.* Harman.

until October 1st, 1886, and his compensation was raised to $300, and it was also agreed that he should receive the fees for examining applicants for insurance in a certain life insurance company, provided they did not exceed $50. By the last clause of the original agreement the defendant made the following covenant:

" In consideration of this contract, made with him by the said Mandeville, the said Harman hereby covenants and agrees not to engage in the practice of medicine or surgery in the city of Newark at any time hereafter."

The defendant has recently, and since the 1st of October, 1886, rented an office in the city of Newark, and put out a sign as a physician. By his answer he admits that he intends to establish himself in practice there. The complainant asks that an injunction issue restraining him from doing so. The defendant resists the application on two grounds: first, that the covenant is unreasonable, and therefore void; and second, that it is unen-

*13 Gray 356;* a conveyance of the land to the purchaser's wife, by whom the money for the lands and practice is paid, is no defence to an action for the vendor's violating his covenant, *Dwight* v. *Hamilton, 113 Mass. 175;* an oral agreement to purchase defendant's lands and practice, with a provision that he will not practice in the town or vicinity, followed by the payment of the purchase-money, the conveyance of the lands, and plaintiff's entering upon practice there, is sufficient, *Doty* v. *Martin, 32 Mich. 462;* to remove from a city and *vicinity,* and refrain from practicing medicine in said city and vicinity for at least five years, was construed to embrace all territory within ten miles of the city limits, *Timmerman* v. *Dever, 52 Mich. 34; 23 Am. Law Reg. (N. S.) 50, 52, note;* see *Carroll* v. *Hickey, 10 Phila. 308;* a purchase of the obligor's house and of one-half of his medicines, jars and bottles, and payment therefor, will sustain an action on his bond not to settle or continue as a practitioner of medicine within fifteen miles of P., after a specified time, *Thompson* v. *Means, 11 Sm. & Marsh. 604;* a bond by a physician that he would not locate himself *and* practice in his profession within six miles of C., and in case he should so locate *or* practice, he would pay the obligor a certain sum for each and every month that he should so practice, is forfeited if he practice within, although he resides without, the prescribed limits, *Smith* v. *Smith, 4 Wend. 468;* " in the village of S. or town of S., for five years," *Mott* v. *Mott, 11 Barb. 127;* not to practice medicine nor in any manner do business as a physician in the county of Oswego, at any time after May 1st, 1851, *Holbrook* v. *Waters, 9 How. Pr. 335;* a sale of a house and practice, with an agreement not to practice in the town for ten years, and, if required by plaintiff, to

Mandeville v. Harman.

forceable in equity because it is not supported by an adequate consideration.

The covenant under consideration is a contract in restraint of trade. Such is the designation universally applied to such engagements. And no principle of law is more generally recognized than that a contract which precludes a person from the right to employ his talents, his industry or his capital in any useful undertaking, is void. Whether the restraint be general or partial, Mr. Justice Bronson says, the law starts out with the presumption that a contract in restraint of trade is void, and it is only by showing that the contract is good that this presumption will be rebutted. The rule is, not that a limited restraint is good, but that it may be good. It is valid when the restraint is reasonable, and the restraint is reasonable when it imposes no shackle upon the one party which is not beneficial to the other. *Ross* v. *Sadgbeer, 21 Wend. 166.* The authorities are uniform that such contracts are valid when the restraint they impose is

give a bond in $5,000 penalty not to do so, will not fix the plaintiff's damages for violation of the covenant at $5,000, where such bond was never asked for or given, *Amedon* v. *Gannon, 6 Hun 384;* see *Niver* v. *Rossman, 18 Barb. 50;* a sale of defendant's office furniture and good-will, with a stipulation to remove not less than twelve miles from the place, and never thereafter to establish himself as a physician within twelve miles, without plaintiff's consent, and to use his influence to throw his practice to the benefit of the plaintiff, and give countenance to no other in that direction, *McClurg's Appeal, 58 Pa. St. 51;* a bond in $1,000, conditioned that B. should not "practice medicine within five miles of S., in which place he has this day deeded certain property to T.," indicates on its face that the $1,000 is a penalty, but circumstances showing an intention that it was liquidated damages may be proved, *Bigony* v. *Tyson, 75 Pa. St. 157;* "not to practice within a radius of five miles" of a certain place, *Betts's Appeal, 10 W. N. C. (Pa.) 431;* nor in the "neighborhood," *McNutt* v. *McEwen, 1 Id. 552;* mutual covenants, by partners, that if A, at the expiration of the term, should sell out his real estate &c. to B, he would not settle himself in practice within twenty miles of B; and that B, if he did not buy A out, would not settle himself in practice within ten miles of A, are binding, *Butler* v. *Burleson, 16 Vt. 176.*

As to similar contracts between dentists, see *Mallan* v. *May, 11 M. & W. 653; Horner* v. *Graves, 7 Bing. 735; Cook* v. *Johnson, 47 Conn. 175; Clark* v. *Crosby, 37 Vt. 188;* see *Alcock* v. *Giberton, 5 Duer 76;* and druggists, *Hastings* v. *Whitley, 2 Exch. 611; Hitchcock* v. *Coker, 6 Q. B. 438; Hayward* v. *Young, 2 Chit. 407; Price* v. *Green, 16 M. & W. 346; Ward* v. *Hogan, 11 Abb. N. C.*

reasonable, and the test to be applied in determining whether the restraint is reasonable or not, prescribed by Chief-Justice Tindal, in *Horner* v. *Graves, 7 Bing. 735,* and uniformly adopted in subsequent cases, is this : to consider whether the restraint is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public. Whatever restraint is larger than the necessary protection of the party can be of no benefit to either. It can only be oppressive, and if oppressive, it is, in the eye of the law, unreasonable and void, on the ground of public policy, as being injurious to the interests of the public. The rule, as thus stated, is the law of this state. Chief-Justice Beasley, in pronouncing the judgment of the court of errors and appeals, in *Brewer* v. *Marshall, 4 C. E. Gr. 537,* said : "And so far has this principle (that contracts in restraint of trade are void) been carried, that even in cases in which the restraint sought to be imposed is only partial, it has been repeatedly held that

---

*478; Baker* v. *Cordon, 86 N. C. 116;* and undertakers, *Hall's Appeal, 60 Pa. St. 458;* and grave-stone makers, *Duffy* v. *Shockey, 11 Ind 70;* and attorneys, *Bunn* v. *Guy, 4 East 190* [criticised in *Bozon* v. *Farlow, 1 Meriv. 471*] ; *Nichols* v. *Stretton, 10 Q. B. 346, 7 Beav 42; Dendy* v. *Henderson, 11 Exch. 194; Whittaker* v. *Howe, 3 Beav. 383* [said to have been overruled, *Benj. on Sales ₴ 525; Tullis* v. *Tullis, 16 Jur. 746, note; 1 Smith's L C. (8th ed.) 766; Wiley* v. *Baumgardner, 97 Ind. 69*] ; *Aubin* v. *Holt, 2 K. & J. 66; Howard* v. *Woodward, 10 Jur. (N. S.) 1123; Galsworthy* v. *Strutt, 17 L. J. (Exch.) 226; Smalley* v. *Greene, 52 Iowa 241;* and school-teachers, *Spier* v. *Lambdin, 45 Ga. 319;* and bankers, *Hoagland* v. *Segur, 9 Vr. 230;* and tavern-keepers, *Heichew* v. *Hamilton, 3 Greene (Iowa) 596, 4 Id. 317; Evans* v. *Elliott, 20 Ind. 283; Harrison* v. *Lockhart, 25 Ind. 112; Studabaker* v. *White, 31 Ind. 211; McAlister* v. *Howell, 42 Ind. 15; Stines* v. *Dorman, 25 Ohio St. 580; Hatcher* v. *Andrews, 5 Bush 561;* see *Mossop* v. *Mason, 16 Grant's Ch. 302, 17 Id. 36, 18 Id. 453; Elliott's Appeal, 60 Pa. St. 161;* and barbers, *Burrill* v. *Daggett, 77 Me. 545;* and photographers, *Baumgarten* v. *Broadway, 77 N. C. 8; Dean* v. *Emerson, 102 Mass. 480;* and publishers, *Tallis* v. *Tallis, 1 El. & Bl. 391; Ingram* v. *Stiff, 5 Jur. (N. S.) 947; Ward* v. *Beeton, 23 W. R. 533; Conrad* v. *Dowling, 6 Blackf. 481; Spicer* v. *Hoop, 51 Ind. 365; Presbury* v. *Fisher, 18 Mo. 50; Webb* v. *Noah, 1 Edw. Ch. 604; Dakin* v. *Williams, 11 Wend. 67; Beal* v. *Chase, 31 Mich. 490;* and book-binders, *Drake* v. *Dodsworth, 4 Kan. 159;* and dress-makers, *Morgan* v. *Perhamus, 36 Ohio St. 517; Morris* v. *Moss, 25 L J. (N. S) 194;* and milliners, *Shackle* v. *Baker, 14 Ves. 468.* See further *19 Cent. L. J. 62, 81, 202; 1 Smith's L. C. 705; 27 Alb. L. J. 24.*—REP.

such agreement will be void unless it be reasonable, and that no such agreement can be reasonable in which the restraint imposed on the one party is larger than is necessary for the protection of the other." This is the rule by which the validity of the covenant on which the complainant relies must be tried.

The fault imputed to the covenant is that the restriction which it imposes is to endure for an unreasonable period of time—for a much longer period than will be necessary for the protection of the complainant. It interdicts the defendant, it will be observed, from practicing medicine or surgery in the city of Newark at any time hereafter. The restraint covers the whole period of the defendant's life, and if an injunction is awarded enforcing the covenant according to its terms, the defendant can never, at any time hereafter, practice his profession in the city of Newark, though the complainant may, the next year, or even the next month, after the injunction issues, lose his life or his reason, or remove to another field of practice. Under such circumstances, the injunction would give no protection to the complainant—he would need none, and the only purpose the injunction could serve would be to causelessly oppress the defendant. The court of king's bench, in *Hitchcock* v. *Coker, 6 Ad. & El. 438,* held a similar contract void. The defendant there had entered the service of the plaintiff, who was a druggist, carrying on his business in the town of Taunton, as the plaintiff's assistant, under a written contract, whereby he agreed, in consideration of the salary to be paid to him by the plaintiff, that he would not, at any time after leaving the plaintiff's service, engage, either directly or indirectly, in the business of a chemist and druggist within the town of Taunton. After leaving the plaintiff's service, the defendant violated his contract; the plaintiff sued him, and had a recovery. The court, in pronouncing judgment on a motion in arrest of judgment, by Lord Denman, C. J., said: " The agreement as to time is indefinite. It is not limited to such time as the plaintiff should carry on business in Taunton, nor to any given number of years, nor even to the life of the plaintiff; but it attaches to the defendant as long as he lives, although the plaintiff may have left Taunton, or parted with his

business, or be dead.   *   *   *   In the absence of any authority
establishing the validity of an agreement thus indefinite in point
of time, and trying the reasonableness of it by the test given in
*Horner* v. *Graves*, we think that the restraint is larger than the
necessary protection of the party in favor of whom it is given
requires, and that it is therefore unreasonable and oppressive."
Judgment was given for the defendant.

The case was then taken by writ of error to the exchequer
chamber, and there the judgment of the king's bench was re-
versed.   The reversal was put distinctly on the ground that a
restriction, so extensive in point of time, was necessary for the
protection of the promisee or covenantee in the enjoyment of the
good-will of his trade, and should therefore be held to be rea-
sonable.   Chief-Justice Tindal, in delivering the opinion of the
court, said : " The good-will of a trade is a subject of value and
price.   It may be sold, bequeathed, or become assets in the hands
of the personal representative of a trader.   And if the restriction
as to time is to be held to be illegal if extended beyond the period
of the party by himself carrying on the trade, the value of such
good-will, considered in those various points of view, is altogether
destroyed.   If, therefore, it is not unreasonable, as undoubtedly
it is not, to prevent a servant from entering into the same trade
in the same town in which his master lives, so long as the master
carries on the trade there, we cannot think it unreasonable that
the restraint should be carried further, and should be allowed to
continue, if the master sells the trade, or bequeaths it, or it be-
comes the property of his personal representative."   *6 Ad. & El.
453.*   This doctrine has been adhered to in subsequent cases, and
is now the established law of Great Britain.   *Pemberton* v.
*Vaughan, 10 Q. B. 87 ; Elves* v. *Crofts, 10 C. B. 241 ;
Atkyns* v. *Kinnier, 4 Exch. 782.*

The legality of restrictions of this kind is put, it will be ob-
served, exclusively on the ground that they must be upheld as
valid, to prevent the destruction of a property right or interest,
called the good-will of a trade or business.   This right or in-
terest, in this country, is without a well-defined legal character.
It would seem that it is scarcely possible for it to exist, even in

Mandeville *v.* Harman.

England, where it has received repeated judicial recognition, except in connection with a store or shop, or some other permanent place of business; for Lord Eldon defined it as nothing more than the probability that the old customers will resort to the old place (*Cruttwell* v. *Lye, 17 Ves. 336*); and Lord Chelmsford has said, concerning it, that when a trade is established in a particular place, the good-will of that trade means nothing more than the sum of money which any person would be willing to give for the chance of being able to keep the trade connected with the place where it has been carried on. *Austen* v. *Boys, 2 De G. & J. 626.* Its existence, as property, in this country has received more decided recognition, in cases involving the disposition and distribution of partnership assets, than in any other class of cases, but even in such cases it can only exist, says Mr. Justice Story, where the partnership conducts a commercial business or trade, and that it does not exist where a professional business is carried on by copartners, for in such cases the amount of business done by each member of the firm depends almost entirely on the confidence reposed in him personally as a professional man. *Story on Part.* § *99.* Sir John Leach, V. C., in *Farr* v. *Pearce, 3 Madd. 74,* held that on the death of one of two surgeons who were conducting business as copartners, the survivor was not obliged, in the absence of a contract requiring him to do so, to give up the business and sell the practice, but that he had the right to continue the practice, and take all the emoluments arising therefrom.

Professional skill, experience and reputation are things which cannot be bought or sold. They constitute part of the individuality of the particular person and die with him. There can be no doubt, I think, that if the complainant was the most distinguished physician of the city of Newark, and had by far the most lucrative practice in that city, and he should be so unfortunate as to die next month, or next year, it would be impossible for his personal representative to sell his good-will or practice, as a thing of property, distinct from the office which he had occupied prior to his death, for any price, and I think it is equally obvious that if it were sold in connection with his office, the

13

only possible value which could be ascribed to it would be the slight possibility that some of the persons who had been his patients might, when they needed the services of a physician, go or send there for the next occupant of the office. The practice of a physician is a thing so purely personal, depending so absolutely on the confidence reposed in his personal skill and ability, that when he ceases to exist it necessarily ceases also, and after his death can have neither an intrinsic nor a market value. And if the complainant should make sale of his practice in his lifetime, it is manifest, all the purchaser could possibly get would be immunity from competition with him, and perhaps his implied approval that the purchaser was fit to be his successor, but it would be impossible for him to transfer his professional skill and ability to his successor, or to induce anybody to believe that he had.

These considerations make it apparent, I think, that the reason which induced the court of exchequer chamber to hold a like restraint valid in *Hitchcock* v. *Coker*, does not exist in this case. There a right or interest existed, which, according to the law of Great Britain, would, on the death of its possessor, pass to his personal representative. No such right or interest exists here; at least its existence is as yet unrecognized in this state by law. No court of law of this state has as yet decided that a covenant between professional gentlemen, so extensive in duration as the one under consideration, is valid. There is strong reason to doubt its validity. It is one of the natural rights of every citizen of this state to use his skill and labor in any useful employment, not only to get food, raiment and shelter, but to acquire property, and I think it may be regarded as very certain that the courts will never deprive any one of this right, or even abridge it, except in obedience to the sternest demands of justice. Chief-Justice Beasley, in speaking of the covenant on trial in *Brewer* v. *Marshall, supra,* said that the restraint which it imposed was general, both as to time, place and person, and it therefore transcended by far the limits of utility to the covenantee, and must for that reason be declared void. And Chief-Justice Woodward, in *Keeler* v. *Taylor, 53 Pa. St. 467,* declared that such contracts,

Mandeville *v.* Harman.

if they were not limited to a reasonable time as well as confined to a reasonable space, were void at law. He said, also, that if the terms they imposed were at all hard, equity would not enforce them. Vice-Chancellor Shadwell had previously given expression to the same view in *Kimberley* v. *Jennings, 6 Sim. 340.* Besides, no one can fail to see that if this covenant is valid and enforceable in equity, then it is competent for every merchant and trader, when he employs a clerk or shop-girl, to require them, although the compensation he agrees to pay is no greater than that which is customarily paid for such service, to enter into a covenant that on quitting his service they will not, at any time afterwards, accept like employment from any other merchant or trader in the same town or city, and that if such covenants are made and are subsequently broken, it will be the duty of this court to enforce them, though the consequence may be that a citizen will thereby be deprived of his only means of supporting himself and his family. It may well be doubted, I think, whether legal rules producing such consequences will ever be established merely by force of judicial action.

The conspicuous defect of the complainant's case is that the legal right on which he founds his claim to an injunction is not clear. No court of this state has ever declared that a covenant like that on which the complainant rests his claim is valid; on the contrary, it appears that the general legal presumption is against the validity of such covenants. In this posture of affairs, the duty of the court is plain; for, in the language of Chief-Justice Beasley, no rule of equity is better settled than the doctrine that a complainant is not in a position to ask for a preliminary injunction when the right on which he founds his claim is, as a matter of law, unsettled. *Citizens Coach Company* v. *Camden Horse R. R. Co., 2 Stew. Eq. 299, 304.*

My judgment being for the defendant on the first ground taken by him, it is not necessary to express an opinion on the second.

An injunction must be denied.