WOLF AND COMPANY, Plaintiff-Appellee, *v.* EDWARD J. WALDRON, Defendant-Appellant.

First District (4th Division)    No. 77-631

Opinion filed July 28, 1977.

Ronald Butler, David S. Acker, and David G. Crumbaugh, all of Chicago (Winston & Strawn, of counsel), for appellant.

Glen H. Kanwit and Michael M. Conway, both of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

This is an appeal from an order granting a preliminary injunction against Edward J. Waldron, defendant, enjoining him from soliciting, diverting, or taking away 27 of plaintiff's clients and from performing any services for them in the capacity of accountant. We affirm the trial court's order.

At the hearing on plaintiff's motion for the issuance of a preliminary injunction, the following evidence was adduced:

Plaintiff, Wolf and Company, is a partnership of certified public accountants with offices in 20 cities who employed defendant as a staff accountant from May 1970 until September 1976. At the time his employment began, defendant executed an employment agreement which contained the following provision:

> "5. In consideration of first party [plaintiff] making this contract and employing second party [defendant] the second party agrees that during the period of two (2) years immediately after the termination of second party's employment with first party:

(a) He will not, either directly or indirectly, make known or divulge the names or addresses of any of the clients of the first party;

(b) He will not, directly or indirectly, either for himself or for any other person, firm or corporation, call upon, solicit, divert, or take away or attempt to solicit, divert or take away any of the clients of first party for whom first party rendered accounting, auditing, tax consulting or business counseling services during the employment of second party;

(c) *He will not perform in a professional capacity* (as distinguished from private employment) *any accounting, auditing, tax consulting or business counseling for any person, firm or corporation to whom, to the knowledge of the second party, such services have been rendered by the first party during the employment of second party;*

(d) He will not solicit, endeavor to procure or accept professional employment (as distinguished from private employment) as public accountant, auditor, tax consultant or business counselor from any person, firm or corporation with whom, to the knowledge of the second party, the first party has made arrangements for services to be rendered or with whom the first party has carried on negotiations respecting services, if the second party has participated therein;

(e) He will not perform in a professional capacity (as distinguished from private employment) any accounting, auditing, tax consulting or business counseling for any person, firm or corporation with whom, to the knowledge of the second party, the first party has made arrangements for services to be rendered or with whom first party has carried on negotiations respecting services, if the second party participated therein.

(f) He will not form an association with or employ or offer to employ in professional employment (as distinguished from private employment) as a public accountant anyone who has been a member of the staff or of the organization of the first party within two (2) years prior to the date of the termination of the second party's employment hereunder." (Emphasis supplied.)

During the course of his employment, defendant was promoted to the position of manager. In this capacity, defendant acted as the plaintiff's representative to clients and supervised their auditing programs.* Upon the termination of his employment, defendant took the files of 27 of

---

* Audit programs are written procedures that constitute the scope of the examination and an outline of procedures to be followed in implementing the audit.

plaintiff's clients. None of these clients are publicly held, nor did defendant "bring" any of the clients to plaintiff.

Subsequently, defendant obtained commitments to conduct audit programs for several of these clients. After dismissing plaintiff from rendering further services, fees of $14,000 and $18,000 were paid to defendant by two of plaintiff's clients, Quinlan and Tyson, Inc., and Reserve Supply Corporation.

Although information about clients and the audit programs established by plaintiff are considered to be confidential information, clients' records are returned upon request. A new auditor could require up to six weeks to become familiar with a client's affairs.

The trial court found defendant to be in violation of the employment agreement, and that continued violations would irreparably injure plaintiff. Thereupon, the trial court issued the preliminary injunction. Pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307) defendant brought this interlocutory appeal.

OPINION

Defendant does not deny that he violated the terms of the contract by providing professional services to plaintiff's clients but seeks to excuse his conduct upon the ground that the restrictive covenant is void as against public policy. It is contended that, since the covenant does not contain a geographic limitation, the provision is overly broad and unenforceable.

■■ Covenants such as the present one, involving performances of professional services, have been held valid and enforceable when the limitations as to time and territory are not unreasonable. (*Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433.) Although defendant would prefer to characterize the absence of a geographic restriction as creating a "nation-wide covenant," we take a different view.

The purpose of the restrictive covenant was to protect plaintiff from losing its clients to former employees by reason of the familiarity gained with the clients' affairs during the course of employment. A limitation as to geographical location would serve no purpose. Plaintiff had numerous offices throughout the United States, and its clients were similarly doing business on a nation-wide basis. It is apparent that any geographical limitation would prove useless. We do not believe that, in the instant case, an absence of a geographical limitation imposed an unlimited, nation-wide restriction. Rather, it evidenced a single-minded desire by plaintiff to protect itself from any unfair advantage which a former employee may attempt to exploit. Plaintiff, by its complaint, indicated that it only wished to impose a limitation on contact with former clients, and did not request a geographical limitation. We feel that no geographical restriction was ever imposed by the terms of the employment agreement.

"In considering this issue we must consider that the interest

plaintiff sought to protect by the covenant was his interest in his clients. (*House of Vision, Inc. v. Hiyane (1967), 37 Ill. 2d 32.*) In bringing the defendant into the association plaintiff was thereby bringing him in contact with a clientele which plaintiff had established over a period of years. Plaintiff was naturally interested in protecting his clients from being taken over by defendant as a result of these contacts. The protection of this asset is recognized as a legitimate interest of an employer." *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 184, 281 N.E.2d 648, 651.

■■ The evidence in the present case discloses that plaintiff had serviced Quinlan and Tyson, Inc., for 30 years and Reserve Supply Corporation for 10 years. It was of great importance to plaintiff that these long standing relationships, and others like them, continue without interference from former employees. We hold that the restrictive covenant was reasonable and therefore valid.

Defendant also contends that plaintiff failed to meet its burden of establishing entitlement to a preliminary injunction.

■■ The purpose of a preliminary injunction is to preserve the status quo, which is the last actual, peaceable, uncontested status which preceded the controversy. (*Schlicksup Drug Co. v. Schlicksup* (1970), 129 Ill. App. 2d 181, 262 N.E.2d 713.) In order for the injunction to issue, plaintiff must establish a need to preserve the status quo in order to prevent irreparable injury for which there is no adequate remedy at law, and a likelihood of success on the merits. (*Amber Automotive, Inc. v. Illinois Bell Telephone Co.* (1973), 15 Ill. App. 3d 769, 305 N.E.2d 270.) The grant or denial of a preliminary injunction rests in the sound discretion of the trial court, which will not be reversed absent abuse of discretion. *Armour and Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795.

■■ A review of the record discloses that plaintiff has satisfied its burden. As already noted, two of plaintiff's long standing clients have diverted their auditing requirements to defendant. We will not speculate at this time as to what the motivation for such a transfer may have been, but note that prolonged interruptions in the continuity of business relationships can cause irremedial damages for which no compensation would be adequate. To allow defendant to continue his actions in violation of the employment agreement pending further hearings would indeed prove to be inequitable.

For the foregoing reasons, the order of the circuit court granting the issuance of a preliminary injunction is affirmed.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.