JERRY L. RHOADS, Plaintiff-Appellee and Cross-Appellant, *v.* CLIFTON, GUNDERSON & CO., Defendant-Appellant and Cross-Appellee.

Third District    No. 80-34

Opinion filed October 27, 1980.—Rehearing denied November 25, 1980.

Joseph Z. Sudow, Charles G. Roth, and Phillip B. Lenzini, all of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellant.

Thomas E. Davies, of Elliff, Keyser & Hallberg, of Morton, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Jerry Rhoads, a former partner in defendant Clifton, Gunderson & Co., a partnership engaged in the practice of public accounting and business consulting, filed this action, seeking to have section 37 of the partnership agreement restricting his right to compete (hereinafter the "noncompetition clause") declared invalid, and seeking damages under sections 19 and 36 of the agreement. The trial court directed a verdict in favor of defendant partnership with respect to the validity of the noncompetition clause. The other issues were submitted to the jury which awarded plaintiff $4,800 under section 19 and $10,000 under section 36. Defendant appeals from the judgment entered on this verdict, and plaintiff cross-appeals from the directed verdict on the validity of the noncompetition clause.

The evidence at trial established that plaintiff became a partner in Clifton, Gunderson & Co. on December 1, 1972. Section 33 of the partnership agreement, relating to expulsion of partners from the firm, provided, in part:

> "In the event that the Partnership Board determines after fair consideration and hearing that any partner's affiliation with this firm has become detrimental to the best interest of the firm, such partner may be asked to withdraw, and in the event of such request, he shall withdraw or shall be expelled."

In April of 1977 the partnership board adopted a resolution that plaintiff be given an opportunity to withdraw on the following terms:

"(1) [that] the withdrawal be effective as of April 30, 1977;

(2) that he be paid his partnership equity as provided in Section 19 * * *; and

(3) that he may elect to not compete as provided in Section 37 * * *, and, in such an event, he would be entitled to additional payments computed as provided in Section 36 * * *."

The resolution further provided that upon plaintiff's request, the board would assemble for a hearing within 8 days, and that if plaintiff failed to withdraw or to ask for a hearing, he would be expelled effective April 30, 1977, pursuant to section 33.

On April 27, Robert Coker, the managing partner, met with plaintiff and gave him a copy of the board's resolution. Coker also gave plaintiff two documents with a space for his signature at the bottom. Each document stated that plaintiff was withdrawing effective April 30, 1977, and would receive his partnership equity under section 19. One of the documents stated that plaintiff agreed not to compete as provided in section 37 and would receive additional payments under section 36. The other stated that plaintiff intended to compete and was waiving any additional payments under section 36.

Plaintiff never signed either document. For the next several weeks he negotiated with members of the partnership concerning the terms of the withdrawal. During that period of time, under the name of J. L. Rhoads & Co., he performed business consulting services for Roosevelt Memorial Hospital, Inc., a client he had served as a member of defendant partnership. The check in payment for these services was sent to Clifton, Gunderson & Co. which subsequently sent plaintiff a letter terminating the negotiations. Clifton, Gunderson & Co. sent plaintiff a check in payment of his capital account under section 19. He received no additional benefits under section 36. Since plaintiff received that letter, he has continued to perform accounting and business consulting services for clients he served while a member of defendant partnership.

We will first consider plaintiff's cross-appeal. Section 33, relating to expulsion, provides, in part:

"If the expelled partner chooses in writing not to compete as provided in the section Noncompetition (Section 37), he shall be entitled to additional payments computed as provided in [Section 36.]"

The evidence is undisputed that plaintiff did not choose in writing not to compete and, in fact, has competed with defendant in violation of the terms of the noncompetition clause. Plaintiff's contention is that if he was expelled pursuant to section 33, he should receive the additional payments under section 36 anyway because the noncompetition clause is invalid.

At the outset we note defendant's argument that plaintiff waived this

issue by failing to file a post-trial motion. In *Keen v. Davis* (1967), 38 Ill. 2d 280, 230 N.E.2d 859, our supreme court held that a party need not file a post-trial motion in order to appeal the circuit court's direction of a verdict in favor of that party's opponent. Accordingly, we will consider the merits of plantiff's argument.

The noncompetition clause provided:

> "A. Each partner * * * agrees that if, within five years after withdrawal or other termination, or during any period in which he is receiving retirement benefits from the Firm (including benefits elected under Section 33) he should, without the agreement of this Firm render services ('services' being work of a character normally performed by the partnership), to a client of the partnership ('client' being an individual or organization to whom the partnership has rendered services within the preceding twenty-four months) in a professional capacity as an individual, a partner of another firm, or as an employee of another individual or firm, he agrees to make payment to this Firm as hereafter stated. * * *
> B. The amount due the firm will be the lesser of the fees charged by the partnership during the twenty-four months preceding such replacement, or the fees charged by the terminated partner for services within twenty-four months after such replacement. * * *"

■■ The validity of a contract in restraint of competition is conditioned on its reasonableness in terms of its effect on the parties to the contract and the public. Consideration should be given to whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than necessary to protect the promisee. *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21.

Plaintiff first contends that the restraint is greater than that necessary to protect defendant because its purpose is to prevent competition *per se*. We disagree. An employee's familiarity with customers' affairs and requirements has been held to be a legitimate business interest entitled to protection by a contract in restraint of competition. (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) In *Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603, the reviewing court upheld a similar noncompetition clause in an agreement between an accounting partnership and its employee, stating:

> "Covenants such as the present one, involving performances of professional services, have been held valid and enforceable * * *." 51 Ill. App. 3d 239, 242, 366 N.E.2d 603, 605.

■■ Plaintiff next contends enforcement of the noncompetition clause would be injurious to the public and cause him undue hardship. Again we

disagree. Although, as plaintiff points out, the noncompetition clause contains no geographical limitation, it only precludes him from serving former clients of Clifton, Gunderson & Co. for 5 years. Plaintiff may practice his profession for others anywhere in the world. With respect to its effect on the public and the promisor, the noncompetition clause in the instant case is substantially indistinguishable from that approved in Wolf & Co. We therefore hold the trial court properly determined that the noncompetition clause was valid as a matter of law.

We next consider defendant's appeal from the judgment entered on the jury's verdict. The question of defendant's liability under sections 19 and 36 was submitted to the jury. Over defendant's objection, the jury was given, *inter alia*, the following instruction:

> "In interpreting provisions of the Partnership Agreement, you should apply a standard of reasonable expectations."

Defendant contends the trial court erred in submitting to the jury the issue of additional payments under section 36 because the court had earlier directed a verdict in defendant's favor on that issue. Plaintiff, on the other hand, maintains that no such directed verdict was entered. Although the trial court's action in this regard is somewhat ambiguous, we believe that it should have entered such a directed verdict, and that submitting the issue to the jury was erroneous. Although there was a factual dispute whether plaintiff withdrew from the partnership under section 30 or was expelled under section 33, in neither case would he be entitled to additional payments under section 36.

Section 30, relating to withdrawal, provides, in part:

> "The Partnership Board has the power and duty to negotiate and enter into agreement on behalf of the partnership with each withdrawing partner as to the amount of additional payments (Section 36), *if any*, to the withdrawing partner *as it deems justified and appropriate*." (Emphasis added.)

Under this provision, the partnership board has the right to determine to what additional payments under section 36, if any, a withdrawing partner is entitled. The evidence is undisputed that the board did not agree to give plaintiff any such payments, and, therefore, he would be entitled to none.

Plaintiff seeks to justify the submission of this issue to the jury by arguing that the partnership agreement is ambiguous. We find nothing ambiguous about the above provision, and the construction of an unambiguous written contract is generally a matter of law for the court. *Titchener v. Avery Coonley School* (1976), 39 Ill. App. 3d 871, 350 N.E.2d 502.

Section 33, relating to expulsion, provides in part:

> "If the expelled partner chooses in writing not to compete as pro-

vided in the section Noncompetition (Section 37), he shall be entitled to additional payments computed as provided in [Section 36]."

According to this unambiguous provision, if plaintiff was expelled, he would not be entitled to additional payments under section 36 unless he chose in writing not to compete. The evidence is undisputed that he did not so choose, and that he has, in fact, been competing in violation of the noncompetition clause.

■■ Verdicts should be directed when all the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Under this test, a verdict should have been directed in favor of defendant with respect to section 36. Accordingly, that part of the judgment awarding plaintiff $10,000 under section 36 should be reversed.

Defendant also contends the trial court erred in failing to direct a verdict in its favor with respect to section 19. Both parties agreed that plaintiff was entitled to recover his equity in the partnership under section 19, but they disagreed about how such equity should be calculated. Section 19 provided, in part:

"In the case of termination of a partnership interest * * *, the valuation of a partner's equity in the firm, which shall represent all of his equity in the capital and assets of the firm at the time such event occurs, shall be his capital account, including earnings to the end of the month preceding the month in which termination occurs, and reduced by any drawings during the fiscal year."

The parties disputed the value of the "earnings to the end of the month preceding the month in which termination occurs," and whether interest on plaintiff's capital deficiency for that part of the fiscal year prior to the termination should be deducted from his capital account.

The partnership agreement provided for a five-step distribution of net income for each fiscal year ending on September 30. The first step involved crediting interest on the partners' capital in excess of their required capital, or charging interest for capital deficiencies. The second and third steps are not material to this case. The fourth step was to allocate remaining income to partners on the basis of the number of profit shares they held to the extent of the "stated value" of the shares, or $50. The fifth step involved allocating remaining income by issuing additional profit shares at "stated value" on a merit basis. The partnership board is to determine who merits such additional shares. Any remaining income is to be allocated to the partners in proportion to their relative numbers of profit shares, including the shares issued on the basis of merit.

With respect to the question of interest on capital deficiency, we note

that section 19 does not provide for the reduction of the "capital account" by such interest. Moreover, the term "capital account" clearly refers to a partner's equity at the beginning of the fiscal year. Otherwise there would have been no need to provide for additions for earnings and reductions for drawings during the fiscal year. Accordingly, the interest on capital deficiency, which would have been charged plaintiff at the end of the fiscal year, should not have been deducted from his capital account.

As of April 30, 1977, the partnership had earned, in addition to the "stated value" of $50 per profit share, an excess profit of $5.55 per share. The parties dispute whether such excess profit should be included under section 19. It clearly is not included within the term "capital account" which refers to equity at the beginning of the fiscal year. Nor, in our view, should it be included within the term "earnings to the end of the month preceding the month in which termination occurs." The excess profit was to be distributed, in part, on the basis of merit. As of April 30, 1977, the partnership board had not determined who merited additional profit shares, and plaintiff cannot be said to have "earned" any excess profit.

The payment Clifton, Gunderson & Co. sent to plaintiff as his capital account correctly excluded the excess profit of $2,592 and erroneously reflected a deduction for interest on capital deficiency of $2,212. Accordingly, there was evidence that plaintiff was entitled to more than he got under section 19, and the trial court properly denied defendant's motion for a directed verdict. The evidence, however, does not support the verdict of $4,800, which should be reduced to $2,212. Plaintiff argues that the verdict should not be disturbed because the partnership agreement was ambiguous with respect to the meaning of section 19. We find no ambiguity in section 19 requiring resolution by the trier of fact based on extrinsic evidence.

In light of our rulings above, we need not consider the other issues raised by defendant.

For the reasons stated above, that part of the judgment of the Circuit Court of Tazewell County awarding plaintiff $10,000 under section 36 is reversed. That part awarding plaintiff $4,800 under section 19 is reduced to $2,212 and affirmed as modified.

Reversed in part; affirmed as modified in part.

BARRY and SCOTT, JJ., concur.