183 N.J. Super. 434 (1982)
444 A.2d 75
MAILMAN, ROSS, TOYES & SHAPIRO, PLAINTIFF,
v.
EDWARD EDELSON, DEFENDANT.
Superior Court of New Jersey, Chancery Division Somerset County.
Decided March 29, 1982.
*436 Richard Wilde for plaintiff (Romano, Hehl, Romankow & Wilde, attorneys).
John H. Schmidt for defendant (Lindabury, McCormick & Estabrook, attorneys).
DREIER, J.S.C.
This action was brought by an accounting firm seeking injunctive enforcement of a restrictive employment covenant against its former employee, and damages for the employee's alleged breach of that covenant. Thus, on this return date of the order to show cause, the issue of the validity of restrictive covenants between accountants, as yet unresolved in New Jersey, is placed squarely before this court.
In January 1978 defendant Edward M. Edelson, a certified public accountant of the State of New Jersey, entered the employ of plaintiff Mailman, Ross, Toyes & Shapiro, an established accounting firm in North Plainfield. Defendant alleges that at no time prior to his hiring did he have any discussions with plaintiff concerning a restrictive employment covenant; however, three days after commencing employment he was presented with a restrictive covenant agreement and directed to execute it as a condition of his continued employment. He did so.
The agreement provides:
During employment and for a period of two (2) years after termination, however that comes about, the undersigned employee shall not accept, solicit or offer accounting services from or to, or employment with any client of MAILMAN, ROSS, TOYES & SHAPIRO, unless MAILMAN, ROSS, TOYES & SHAPIRO consents in writing to permit such services.
*437 The agreement further provides for compensatory and exemplary damages, and injunctive relief in the event of a breach.
Defendant resigned from his position with plaintiff in November 1981 and subsequently opened his own office, also in North Plainfield. Just prior to his departure from the firm defendant alleges that one of the partners made an unsolicited statement to him that he, the partner, would have no problem with defendant's providing accounting services for plaintiff's clients.
Defendant asserts that he did not, after leaving plaintiff's employ, solicit plaintiff's clients and, in fact, responded to unsolicited telephone inquiries from several of plaintiff's clients that he was bound by a restrictive covenant and therefore could not provide accounting services to the caller. Defendant did, however, accept employment from one of plaintiff's clients who had recently terminated his relationship with plaintiff, but only after learning of an alleged oral representation by another of plaintiff's partners to the former client, that plaintiff had consented to the new arrangement. Plaintiff now claims that Edelson violated the terms of the restrictive covenant by accepting this employment without plaintiff's written consent.
New Jersey case law is barren of any consideration of the enforceability of such restrictive employment covenants in the accounting profession. Decisions from other jurisdictions offer no clear direction.[1] However, the principles articulated in three *438 seminal New Jersey cases dealing with restrictive covenants in other fields provide the frame-work within which this covenant must be analyzed.
Under Solari Industries, Inc. v. Malady, 55 N.J. 571, 576 (1970), a covenant not to compete will be given effect "if it is reasonable in view of all the circumstances of the particular case." Solari further provides a three-prong test to determine reasonableness: (1) the covenant must be no more restrictive than is necessary to protect the legitimate business interests of the employer; (2) it must impose no undue hardship on the employee and (3) it must not be injurious to the public interest. In light of these criteria the court may reduce or impose temporal or territorial restrictions should the covenant on its face fail to limit its effect to a definite and not excessive time and area, or may otherwise reform the covenant to render it reasonable and therefore enforceable.
In Dwyer v. Jung, 133 N.J. Super. 343 (Ch.Div. 1975), aff'd 137 N.J. Super. 135 (App.Div. 1975), the court considered the validity *439 of a restrictive covenant in a partnership agreement among attorneys. That covenant contained no territorial limitation but rather prohibited each partner from maintaining any professional relationship whatsoever with a client of another partner for a period of five years following the termination of the partnership. The covenant was declared void as against public policy, with the court focusing on the special relationship between lawyer and client:
Commercial standards may not be used to evaluate the reasonableness of lawyer restrictive covenants. Strong public policy considerations preclude their applicability. In that sense lawyer restrictions are injurious to the public interest. A client is always entitled to be represented by counsel of his own choosing. The attorney-client relationship is consensual, highly fiduciary on the part of counsel, and he may do nothing which restricts the right of the client to repose confidence in any counsel of his choice. [133 N.J. Super. at 346-347; footnote and citations omitted].
The court's holding, however, was based on DR 2-108(A), which expressly forbids restrictive employment covenants between lawyers.
In Karlin v. Weinberg, 77 N.J. 408 (1978), our Supreme Court refused to adopt a per se rule declaring restrictive covenants unenforceable between physicians. There the covenant prohibited the employee from engaging in the practice of dermatology within a ten-mile radius of his former employer's office for a period of five years. Analyzing the effect of such a covenant according to Solari's criteria, the court found the covenant to be valid and enforceable.
Although the court "endorse[d] the sound holding of Dwyer," (77 N.J. at 419), it distinguished that case on two grounds. First, the Dwyer covenant contained a blanket proscription which in effect restricted the rights of the public to chose an attorney, whereas under the Karlin covenant, although
... some patients may have to travel a greater distance to Dr. Weinberg's new office (and conceivably some a shorter distance) than they travelled to his former office, no patient will, by force of law, automatically be deprived of continuing his ongoing relationship with his physician. [at 419]
Second, "Dwyer represents an exercise by the judicial branch of its unique constitutional responsibility for regulating the conduct *440 of attorneys." (At 419). Karlin emphasized that the regulations governing physicians do not include a parallel prohibition to DR 2-108(A) on which the Dwyer decision was grounded.
The covenant in the case now before the court is similar to that in Dwyer  it does not restrict the location of a professional practice but rather limits the clientele which may be served. On the other hand, accountants, unlike lawyers but like physicians, are not bound by any regulation barring noncompetition agreements.[2] The problem presented here, however, will not be resolved by attempting to determine if accountants are more similar to doctors than to lawyers, or vice versa. Rather, it is necessary to examine the effects of this particular type of covenant on the accounting profession and its clientele, applying the Solari criteria.
An employer's ongoing professional relationship with its clients is generally recognized as a legitimate business interest which may be protected through a restrictive covenant. Karlin v. Weinberg, supra, 77 N.J. at 417; Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 33 (1971). See, also, Ebbeskotte v. Tyler, 127 Ind. App. 433, 142 N.E.2d 905 (Ind. App. 1957); Scott v. Gillis, 197 N.C. 223, 148 S.E. 315 (1929). Here, Mailman, Ross, Toyes & Shapiro is an accounting firm with an established practice. During his three-year association with the firm defendant became acquainted with its clientele and familiar with its business practices. No allegations are made, however, that defendant used any confidential information, such as plaintiff's client lists or fee schedules, which may have come to him as a result of his employment with plaintiff, to injure plaintiff's relationship with *441 its clients. Nor is there any indication that defendant induced clients to leave plaintiff and engage his services. The basis of plaintiff's complaint is that defendant accepted employment from a client which had already terminated its relationship with plaintiff before seeking out defendant's services.
The second prong of the Solari test of reasonableness calls for a weighing of the burden placed on the employee by the restrictive covenant. Here the duration of the covenant is but two years, a term generally held to be reasonable. See, for example, Rhoads v. Clifton, Gunderson & Co., 89 Ill. App.3d 751, 44 Ill.Dec. 914, 411 N.E.2d 1380 (App.Ct. 1980). The covenant, however, contains no territorial limitation, an omission which many courts in other jurisdictions have found fatal. See, for example, Smith, Batchelder & Rugg v. Foster, 119 N.H. 679, 406 A.2d 1310 (Sup. 1979). Magic Fingers, Inc. v. Robins, 86 N.J. Super. 236 (Ch.Div. 1965). Other courts have implied a reasonable territorial limitation in an effort to uphold the covenant. Ebbeskotte v. Tyler, 127 Ind. App. 433, 142 N.E.2d 905, supra. This latter course became open to New Jersey courts with the Solari decision in 1970.
The emphasis placed on the inclusion of a reasonable territorial limitation in determining the enforceability of a restrictive covenant, however, seems in some instances to misapprehend the type of interest which is sought to be protected. When a covenant prohibits the employee from practicing his profession for a stated period of time following his dissociation from his former employer, such is a pure restriction on competition and must be limited to a definite and reasonable geographical area or be found void as against public policy. Mandeville v. Harman, 42 N.J. Eq. 185, 190 (Ch. 1889). Under Karlin, such a covenant between professionals may be enforced in New Jersey. When, on the other hand, the covenant does not attempt to carve out a fixed area in which the employer may operate free from the competitive incursions of its former employee, but rather restricts the customers or clients with whom the employee *442 may deal, a different interest is at stake. To impose a geographical limitation on a covenant which seeks to protect an established clientele instead of an area of noncompetition would not make the burden imposed on the employee by a covenant "reasonable" but would merely mandate an unwarranted change in the nature of the interest protected.
The third and final prong of Solari's test of reasonableness focuses on the covenant's possible injurious effect on the public. Here, again, it is necessary to examine the nature of the interest protected by the covenant. As noted in Karlin, a geographical restriction on the practice of a profession impinges only slightly on the public interest, since its effect is merely to alter the travel patterns of the patients or clients. 77 N.J. at 419. However, a covenant which attempts to "protect" the clients from contact with the former employee operates to restrict the solicitation rights of the public. Such a covenant, in effect, binds those who were never parties to the agreement.
Applying the three-part Solari test of reasonableness to the covenant at issue here, and balancing the respective interests of the employer, the employee and the public, it is apparent that no preliminary injunction should issue, since this remedy is to be withheld except where there is a clear right to the requested relief. Citizens Coach Co. v. Camden Horse R.R. Co., 29 N.J. Eq. 299 (E. & A. 1878). In the absence of some showing either that defendant engaged in unfair competition amounting to tortious conduct, i.e., that he interfered with plaintiff's present or prospective economic relations[3] or that he used confidential information or trade secrets obtained while in plaintiff's *443 employ[4] in his later dealings with plaintiff's clients, or that defendant solicited or accepted employment from plaintiff's present clients in violation of the terms of the covenant, this court finds that plaintiff has alleged insufficient encroachments on its legitimate protectible business interests to override the factors favoring defendant and the public when the second and third Solari criteria are considered.
Nor will this court attempt to ease the burden on defendant's interest by reforming the covenant to prescribe a geographical area within which he may not practice his profession.[5] The circumstances here, unlike those in Ebbeskotte, do not indicate that either party intended or understood that any territorial limitation was to apply. Furthermore, defendant has already established his own office in the same municipality as plaintiff firm, in apparent reliance on being permitted to do so under the terms of the covenant. It would be patently unfair to require him now to relocate.
The Edelson covenant is also manifestly deficient when measured against the third Solari standard, for although it purports to mitigate the economic effects of defendant's competition with his former employer, in actuality it limits the public in its choice of an accountant. Accountants are not commercial business people like the salespersons restricted by noncompetition agreements in Solari and Whitmyer. Accountants, like doctors and lawyers, are engaged in a profession which necessarily requires *444 clients to reveal personal and confidential information to them in the course of the professional relationship. Like the lawyer-client relationship characterized in Dwyer, the accountant-client relationship is also consensual and fiduciary, and the right of the client to repose confidence in the accountant of his or her choice should not readily be circumscribed.[6] It is this distinction between restrictive covenants in a commercial or business setting, where primarily economic interests are at stake, and those binding professionals who depend largely on unconditional confidential relationships to serve their clients satisfactorily, which underscores the greater degree of injury to the public that may occur in the latter instance.
It would not be reasonable, therefore, under a Solari analysis, to preclude those of plaintiff's present clients from unilaterally exercising their free choice, first to leave plaintiff, and then to seek to continue a confidential business relationship with defendant  even though he is no longer associated with plaintiff firm. Nor would it be reasonable to bar plaintiff's former clients from independently seeking out defendant's services. The clients' right to select the custodians of their financial affairs is paramount, and may not be unreasonably encumbered.
Until this matter comes to trial, the restrictive covenant at issue will be given enforceable effect only insofar as it prohibits defendant's interference with plaintiff's existing professional relationships. There is no manifest need at present for the interposition of this court's injunctive power. The burden is therefore on defendant to inquire of prospective clients if they are presently being served by plaintiff. If such is the case, defendant may solicit those clients only at his peril, i.e., upon pain of possible future damages; he may neither induce them to *445 abandon plaintiff and engage his services, nor may he accept employment from such clients until they have effectuated an independent decision to sever their professional relationship with plaintiff.
If, at trial, it is found that plaintiff acted in bad faith in obtaining Edelson's signature on the covenant and in seeking to enforce it against him, then its restrictions will be deemed to be without effect. Defendant then may seek out and accept employment from plaintiff's current clients, limited only by common law principles barring unfair competition. If, on the other hand, plaintiff is found to have acted in full good faith, the covenant will be enforceable to the extent set forth in this opinion.
NOTES
[1] Decisions enforcing covenants which prohibit accountants from soliciting or providing services for clients of their former employers: Faw, Casson & Co. v. Cranston, 375 A.2d 463 (Del. Ch. 1977) (finds three-year restriction against practicing accounting on the Delmarva Peninsula not unreasonable); Rhoads v. Clifton, Gunderson & Co., 89 Ill. App.3d 751, 44 Ill.Dec. 914, 411 N.E.2d 1380 (App.Ct. 1980) (upholds five-year restriction with no geographical limitation); Wolf & Co. v. Waldron, 51 Ill. App.3d 239, 9 Ill.Dec. 346, 366 N.E.2d 603 (App.Ct. 1977) (upholds two-year restriction with no geographical limitation); Foti v. Cook, 263 S.E.2d 430 (Va. 1980) (upholds post-employment covenant imposing two-year restriction, specifying no geographical limitation, and providing for sizeable liquidated damages); Ebbeskotte v. Tyler, 127 Ind. App. 433, 142 N.E.2d 905 (1957) (upholds two-year restriction; court finds implied territorial limitation); Scott v. Gillis, 197 N.C. 223, 148 S.E. 315 (1929) (upholds three-year restriction with no geographical limitation); Racine v. Bender, 141 Wash. 606, 252 P. 115 (Sup. 1927) (upholds three-year restriction without geographical limitation).

Decisions holding invalid covenants which prohibit accountants from soliciting or providing services for clients of their former employers: Smith, Batchelder & Rugg v. Foster, 119 N.H. 679, 406 A.2d 1310 (Sup. 1979) (refuses to enforce three-year restriction; focuses on lack of defined geographical area, on onerous liquidated damages provision, and on great disparity in size of plaintiff's and defendant's clientele); Peat, Marwick, Mitchell & Co. v. Sharp, 585 S.W.2d 905 (Tex. Ct. App. 1979) (finds two-year restriction without territorial limitation to be invalid as restraint of trade and as violation of public policy); Heller v. Magaro, 148 Ga. App. 591, 252 S.E.2d 11 (Ct.App. 1978) (two-year restriction with no geographical limitation unenforceable as against public policy; Howard Schultz & Assoc. v. Broniec, 239 Ga. 181, 236 S.E.2d 265 (Sup. 1977) (court refuses to rewrite covenant with unjustifiably broad territorial restriction which also fails to specify nature of business activities prohibited); Fuller v. Kolb, 238 Ga. 602, 234 S.E.2d 517 (Sup. 1977) (two-year restriction with no geographical limitation unenforceable); Gant v. Warr, 286 Ala. 387, 240 So.2d 353 (Sup. 1970) (covenant unenforceable under statute which voids restrictions on the exercise of a lawful profession).
[2] Certified Public Accountants are governed by statute, specifically N.J.S.A. 45:2B-1 et seq., which, among other provisions, continues the New Jersey State Board of Certified Public Accountants (N.J.S.A. 45:2B-4) and empowers the Board to promulgate rules and regulations, including those governing professional conduct (N.J.S.A. 45:2B-6(g)). No such rule or regulation prohibits restrictive employment covenants between accountants.
[3] See, also, Auxton Computer Enterprises, Inc. v. Parker, 174 N.J. Super. 418, 423 (App.Div. 1980), which holds that an employee who is not bound by a restrictive covenant after termination of employment, may, while still employed, arrange for new employment by a competitor, the only restriction being "that he may not solicit his employer's customers for his own benefit before he has terminated his employment." (Emphasis added).
[4] An employer has a legitimate interest in protecting this kind of information, even in the absence of a noncompetition agreement. Sun Dial Corp. v. Rideout, 16 N.J. 252 (1956).
[5] Solari implies that the remedy of reformation of a covenant to include reasonable geographical or temporal restrictions may be available only when the employer acted "in full good faith." Although the resolution of factual issues must, of course, await trial, defendant's allegation that the restriction was part of a nonnegotiable post-employment agreement, coupled with his claim that two of plaintiff's partners represented their willingness to allow him to service plaintiff's clients, throws doubt on the good faith of plaintiff's position.
[6] Although the Dwyer decision is sui generis, based as it was on DR 2-108(A) which regulates only the legal profession, Karlin approved the reasoning of Dwyer, which focused on the principle of unfettered client choice as the basis for the Disciplinary Rule. (Karlin, supra, 77 N.J. at 419). See, also, Justice Sullivan's dissent in Karlin.