J. A. MIGEL, INCORPORATED, respondent,

*v.*

THEODOR BACHOFEN, appellant.

[Decided October 20th, 1924.]

The remedy by specific performance is discretionary; and, where the enforcement of a contract will be attended with great hardship and manifest injustice to the defendant, the court should always refuse its aid.

On appeal from the court of chancery.

*Mr. Edward P. Stout,* for the appellant.

*Mr. Merritt Lane,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed to enforce a contract for the assignment of certain patent rights covered by letters issued by the United States patent office to the defendant, Bachofen. The patented invention was an appliance to be used in the manufacture of silk fabric, its purpose being to produce a velvety appearance on the face thereof.

At the time the contract was entered into the defendant was an assistant superintendent in the plaintiff's silk fabric factory and had charge of experiments looking to the creation of novel samples of silk. The complainant was then using in the manufacture of its product a machine known as the Velcut motion, which, by cutting certain threads upon the surface of the silk, produced the velvety appearance desired. The defendant considered the operation of these machines unnecessarily costly, and undertook to design a loom

attachment which would produce similar results at a less price, but which would not infringe upon the patent of the Velcut company. He communicated this fact to the complainant, and, having progressed to a certain extent in his experiments, which were conducted in the complainant's factory and with its consent, he, at the latter's request, executed, under date of August 23d, 1921, a contract, by the terms of which the latter agreed to pay all the expenses connected with the obtaining of letters patent on the defendant's invention, if it should be successful, and to supply a loom and pay the expense of having the attachment applied thereto and trying it out, but limiting its pecuniary obligation to the sum of $400. The agreement further provided that, if the attachment should work satisfactorily, the complainant would pay to Bachofen as a royalty for the use of it a sum equal to five cents per finished yard of goods manufactured on machines equipped with the defendant's invention. Bachofen, on his part, assigned the invention to the complainant, with a right to obtain letters patent thereon in this and other countries. He further agreed to execute and deliver a separate assignment of his invention for each country in which the complainant should elect to apply for patents, and to execute licenses to the complainant for the use of his invention in foreign countries upon the same terms and conditions already set forth—that is, the payment of a royalty of five cents per yard upon the manufactured goods. He also assigned the sole and exclusive rights to make, use and sell machines embodying his invention, not only in this country, but in every other country where letters patent should be issued thereon.

About a month after this agreement was executed Bachofen was discharged from the complainant's employ, the latter up to that time having expended something like $900 in the development of the invention, plus lawyer's fees. After his discharge, at which time, apparently, his invention seemed to be impracticable, he further experimented upon it, with the result that, after having expended somewhere in the neighborhood of $10,000, he developed a machine which

accomplished the purpose he originally had in mind. Hav·
ing done this, and in June, 1922, he applied for and received
letters patent for his invention, and thereafter issued licenses
to manufacturers other than the complainant permitting the
use thereof.

In the meantime, the complainant had continued the
manufacture of its product with the use of the Velcut
motion machines, having increased the number thereof from
ten in 1921, at the time of the defendant's discharge, to
about one hundred and twenty in March, 1922, and on this ·
latter date acquired the exclusive right to use the Velcut
motion.

The complainant, although it apparently took no interest
in the attempt of Bachofen to develop his invention after his
discharge in 1921, and took no steps to ascertain whether he
was still working upon it until after he had succeeded in per-
fecting it, and in obtaining letters patent on it and licensing
parties thereunder, when it finally awoke to the situation,
filed the present bill, the purpose of which, as has already been
stated, was to compel the assignment of the patent rights
which have been acquired by the defendant as the result of
the development of his invention; and the hearing resulted
in a decree directing that the relief asked for by the com-
plainant should be granted.

The defendant has appealed on various grounds, only one
of which we find it necessary now to consider, and that is
that it was inequitable for the court of chancery to enforce
this contract against him.

In considering this contention, the sequence of events is
quite significant.  The original expenditure by the complain-
ant in assisting Bachofen to develop his invention was not
much in excess of $1,000.  After it had apparently ceased to
be interested in the matter, Bachofen expended in the neigh-
borhood of $10,000 in the perfecting thereof.  During the
period of his experiments the complainant had not only
largely increased the manufacture of its velvet-finished ma-
terial by the use of the Velcut motion machines, but had also
acquired the full and exclusive control of those machines and

of the patent under which they were constructed. The primary consideration to the defendant, Bachofen, for the making of the contract, was the payment of royalties upon goods manufactured by the use of the appliance which he was seeking to perfect, whether the goods were manufactured by the complainant itself or by its licensees in this and other countries. The contract itself was prepared by counsel for the complainant, and it is significant that there is nothing in it which obligates the complainant to make any use whatever of the Bachofen appliance, if it should be perfected, notwithstanding the fact that it might produce the manufactured article more economically than the Velcut motion. The manifest purpose sought by the complainant through this litigation, so far as it can be ascertained by a reading of the proofs sent up with the appeal, is not the enjoyment by it of the use of the defendant's patented appliance, but the prevention of the use thereof by any competitor in business, so that, having absolute control of the Velcut motion machine, it will be protected against competition in the sale of goods manufactured with it. Stated in another way, the purpose sought to be accomplished by the complainant is not the enjoyment of the use of this invention, but the destruction of its use, and, as a necessary result, the deprivation of the defendant from the reception of any revenues under it by way of royalties either from the complainant or anybody else, and this, nothwithstanding the fact that the defendant has expended out of his own pocket in developing his invention more than ten times the amount that the complainant agreed to advance, and did (presumably) advance, as a part of the consideration for the agreement of the defendant to transfer the invention to it. A court of equity ought not to lend its aid in the carrying into execution a scheme so manifestly unfair to the defendant, and for this reason a decree of specific performance should have been denied. The remedy by specific performance is discretionary; the question is not what must the court do, but what, in view of all the circumstances of the case in judgment, should it do to further justice, and, where the enforcement of the contract will be at-

tended with great hardship or manifest injustice to the defendant, the court should always refuse its aid. *Plummer* v. *Keppler, 26 N. J. Eq. 481,* and cases cited; *Blake* v. *Flatley, 44 N. J. Eq. 231.*

For the reason indicated, the decree appealed from will be reversed.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, MCGLENNON, KAYS—15.

*For affirmance*—None.