IRVINGTON VARNISH AND INSULATOR COMPANY, a corporation of the State of New Jersey, complainant-appellant,

*v.*

PETER VAN NORDE, defendant-respondent.

[Argued October 25th, 1945.   Decided March 14th, 1946.]

*Mr. Charles C. Trelease (Mr. H. Preston Coursen,* of the New York bar, of counsel), for the complainant-appellant.

*Mr. George R. Sommer (Mr. Arthur Garfield Hays, Mr. John Schulman* and *Mr. Seymour M. Heilbron,* of the New York bar, of counsel), for the defendant-respondent.

The opinion of the court was delivered by

FREUND, J.

The complainant appeals from a final decree entered in the court below, wherein it was decreed that the bill of complaint be dismissed.

The complainant continuously from 1906 to the present time has manufactured varnishes and insulating materials used for electrical insulation purposes and flexible coated textile and paper materials. The complainant operates one of the largest industrial plants of its kind, having secret formulae for the making of certain products unknown to the defendant and which are not involved in this litigation. The complaint alleges that the defendant by reason of his long employment and the various positions held by him with the complainant has gained confidential information as to the complainant's machinery, equipment, processes and methods, which are secret and not to be revealed to a competitor.

The defendant was employed by complainant in 1918 and continued in its employ until June 1st, 1944, when, dissatisfied with what he conceived to be a reduction in his employment status, he resigned and within two weeks thereafter entered the employ of the Electro-Technical Products, Inc., a competitor of complainant. Defendant began his employment with complainant in its machine shop as a mechanic and successively thereafter was promoted to machine shop foreman, plant superintendent, chief engineer and master mechanic. When defendant left the employ of complainant he was receiving a salary of $350 each month.

Early in 1942, after the loss to competitors of some of complainant's skilled employees, the complainant had defendant and other key employees, who had knowledge of secret methods and processes, execute an agreement in writing, whereby the defendant, in consideration of his continued employment by the complainant, covenanted he would "keep secret (neither disclosing to others nor himself making use of, except as to disclosure and use in the line of duty)  *  *  *  confidential information concerning Employer's business,  *  *  *  confined to the United States and to a period of two years from the date of cessation of employment  *  *  *. That he will, for a period of two years following the cessation of his employment by Employer, howsoever the same shall occur, refrain from engaging in, being employed by, or otherwise connected with, directly or indirectly (whether as  *  *  *  employee, or in any other capacity) any competing business enterprise located in the United States."

The bill of complaint prays that defendant "be restrained and enjoined, during a period ending May 31st, 1946, from engaging in, being employed by, or otherwise connected with,  *  *  *  especially, Electro-Technical Products, Inc.,  *  *  *  and from disclosing to others and from himself making use of confidential information  *  *  *  specifically, all information, whether written or unwritten, concerning complainant's machinery, equipment and processes."

The defendant's answer alleges, *inter alia*, "that said contract was obtained through duress and fraud practiced upon defendant by said complainant." The defendant's proof was

utterly destitute of any evidence to substantiate the defenses of duress or fraud; to the contrary, defendant had the agreement in his possession for several days and the evidence discloses that complainant suggested that the defendant secure independent legal advice before executing the agreement. It must be assumed that defendant when he voluntarily executed the agreement was satisfied with the terms thereof.

The defendant, notwithstanding his written agreement, and within two weeks after he resigned from his employment with complainant, went to the office of the Electro-Technical Products, Inc., seeking employment and was thereupon employed at $400 each month as its plant engineer. The actions of the defendant constitute a breach of his written contract.

The learned Vice-Chancellor below, after final hearing, dismissed the bill of complaint, pointing out that "complainant confined its proofs to machines as distinguished from processes" and that "the evidence embraces only the design of machines." The court below found that certain, if not all, of the machines were "standard devices" and that Van Norde's knowledge respecting them "is not confidential" and that complainant "has not taken proper measures to protect the secrecy of its so-called refinements and improvements of the machinery," that outside machine shops had worked on the machinery without any request to regard the designs as confidential, but concedes that "there may be confidential information with respect to things not patentable."

This court has heretofore approved the principle that:

"One who invents or discovers and keeps secret a process of manufacture, whether patentable or not, has a property therein which this court will protect against one who, in violation of contract and breach of confidence, undertakes to apply it to his own use or to disclose it to a third person." *Salomon* v. *Hertz, 40 N. J. Eq. 400,* and quoted in *Club Razor and Blade Manufacturing Corp.* v. *Bindzsus,' 131 N. J. Eq. 283,* at the foot of *p. 287,* and affirmed by this court in *133 N. J. Eq. 38.*

The court below further found that complainant had failed to prove that defendant had such confidential information and admitted it was difficult to frame an injunction which

would inform defendant with reasonable certainty as to what he was forbidden to do. The complainant concedes the difficulty in enforcing the latter point, but argues that the primary objective is the enforcement of the covenant against competitive employment. The covenants against disclosures and the use of confidential information are incapable of effective enforcement, except by means of enforcing the covenant against competitive employment.

The Vice-Chancellor also found that there was no "proof of inequitable conduct" in that "Electro did not entice the defendant away from his employer in order to gain complainant's secrets" and that there is nothing to indicate that Van Norde agreed "to sell confidential information" and no proof that Van Norde had "divulged or intended to divulge confidential information." While it may be a factor to be considered, we do not deem it of great importance that Electro did not entice Van Norde away from complainant, but the fact is and the proofs disclose that Van Norde violated his covenant by accepting employment with Electro doing work comparable to that which he had been performing for the complainant. If Van Norde was moved in his own interest to break his agreement and thus violate complainant's contractual rights, we think the situation would be the same as if Electro were the moving party in the plan to defraud complainant. Moreover, even though there was no intention on the employee's part to sell confidential information, if the result of his employment is the divulgement of confidential information in violation of his contract, an injunction should issue.

The Vice-Chancellor also concluded that, if Van Norde "cannot work for a competitor, both he and society will lose a great part of the benefit of his intimate knowledge of this kind of machinery. He will have to start over again, on a lower level, in some other machinery line." We do not concur in the view that society has such an interest as to deny enforcement of defendant's covenant. The covenants to be enforced are part of a written agreement between the litigants, arrived at after careful consideration by the parties.

We agree with the court below, in quoting from *Sternberg v. O'Brien, 48 N. J. Eq. 370,* that an injunction should not

issue where it would "operate oppressively or contrary to the real justice of the case, or where it is not the fit and appropriate method of redress under all circumstances of the case, or when the benefit it will do the complainant is slight in comparison with the injury it will do the defendant." But we cannot agree that this principle serves to deny to complainant the enforcement of the negative covenant in question.

The Vice-Chancellor further said that "most business men seem to consider everything connected with their business to be highly confidential" and we are inclined to believe the complainant had a right to expect, when Van Norde executed the agreement between the parties, that complainant would be secure against the revealing by defendant of confidential information defendant acquired in his long employment with complainant. In all probability "confidential information" is, perhaps, in some respects conjectural, yet defendant had acquired information respecting mechanical processes and methods which apparently were of value to a competitor. Is it not likely that this was the reason why he was employed by Electro? His skill and knowledge, acquired in the service of complainant, were the things purchased by Electro. We do not conceive it to be unreasonable for the complainant to guard against this very situation by a covenant against employment by a competitor for a reasonable period of time. This is a reasonable measure designed to prevent the taking of an unfair advantage of the employer by the competitor and also by the employee. We see nothing oppressive or unjust in the covenant, as applied to the instant case. We think the matter *sub judice* is within the principle stated in *Ideal Laundry Co.* v. *Gugliemone, 107 N. J. Eq. 108,* where this court, by the opinion of Mr. Justice Trenchard, held that:

"Courts of equity will protect an employer against a breach of a written agreement, founded upon a good consideration, and reasonable in its terms, made by an employe, not to engage with a rival after the termination of the employment, where the services of the employe have been of such a character that he gained knowledge of his employer's business methods and secrets, the disclosure of which to a rival would result in irreparable injury to the employer, and where it

further appears that the purpose of the subsequent employment, resulting in the breach, was to obtain the benefit of those secrets, and that there is imminent danger that through such subsequent employment such secrets would be disclosed."

And

"Where, as here, an employment is of such a character as to inform the employe of business methods and secrets, a contract of employment at a stated salary is a sufficient consideration for the condition that the employe will not engage in a similar employment within a reasonable time and territory after the termination of such employment."

The difficulty with the Vice-Chancellor's position is that, in finding an analogy in the case of *Ideal Laundry Co.* v. *Gugliemone, supra,* he makes a distinction that is wholly arbitrary. The gravamen of the cause of action in *Ideal Laundry Co.* v. *Gugliemone, supra,* was the disclosure of business methods and secrets to the complainant's rival, resulting in irreparable injury to the complainant; such is also the basis of the covenant sought to be enforced here. *Vulcan Detinning Co.* v. *American Can Co., 72 N. J. Eq. 387; Maas & Waldstein Co.* v. *Walker, 100 N. J. Eq. 224;* affirmed in *102 N. J. Eq. 328.*

The gist of the argument *contra* is that the employer here failed to prove that "the methods or processes were in fact secret and revealed only in confidence." But we do not agree that the methods or processes must necessarily be in fact "secret" in the sense that "they are known only to the employer and those of its employees to whom it is necessary to confide them." This might be a pertinent argument if the covenant were merely against the disclosure of secret methods and processes. Here, however, we have a covenant by Van Norde against his employment by complainant's competitors and we see nothing unreasonable about a covenant that protects the employer against the disclosure of business and industrial methods and processes used in its establishment. *Stone* v. *Goss, 65 N. J. Eq. 756.*

The decree advised below is accordingly reversed, and the cause remanded for further proceedings in conformity with this opinion.

BODINE, J. (Dissenting.)

The facts and law in this case are admirably expressed in the opinion of Vice-Chancellor Bigelow and reported in *137 N. J. Eq. 134*.

The covenants in suit as construed in the majority opinion of the court creates a condition of industrial servitude. The limitation upon such agreements has always been that such contracts are enforceable so far only as is necessary for the protection of the employer's property rights. *Sternberg* v. *O'Brien, 48 N. J. Eq. 370*. Most manufacturing processes are substantially identical.

The proofs in this case do not disclose that there were any unusual processes followed by the complainant. The majority opinion forbids employment with a competitor. Such a result is most unfortunate because it deprives the employee of the right to use his skill in the only industry he has knowledge of. The logic is that a potter can only work for some one other than a potter, if he can agree not to work for a competitor. Such has not been the law.

The Chief-Justice, Mr. Justice Perskie, and Judges Wells, Rafferty and Dill have asked me to say that they concur in this dissent.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, PERSKIE, WELLS, RAFFERTY, DILL, JJ.   6.

*For reversal*—PARKER, CASE, DONGES, HEHER, COLIE, OLIPHANT, FREUND, McGEEHAN, JJ.   8.