216 N.J. Super. 667 (1987)
524 A.2d 866
INGERSOLL-RAND COMPANY, A NEW JERSEY CORPORATION, AND INGERSOLL-RAND RESEARCH, INC., A DELAWARE CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
ARMAND CIAVATTA, A RESIDENT OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1987.
Decided April 8, 1987.
*668 Before Judges DREIER, SHEBELL and STERN.
Charles J. Walsh and Stuart M. Feinblatt argued the cause for appellant (Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, Attorneys; Charles J. Walsh of counsel and on the brief; Stuart M. Feinblatt, on the brief).
*669 Mark Anderson and James M. Rhodes, Jr., pro hac vice, of the New York Bar argued the cause for respondents (Woolson, Guterl, Sutphen, & Anderson, Attorneys; Mark Anderson, on the brief; Mr. Rhodes, of counsel).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant, Armand Ciavatta, has appealed from a Chancery Division judgment enforcing a contractual obligation contained in an "Agreement Relating to Proprietary Matter" he signed while an employee of plaintiffs, Ingersoll-Rand Company and Ingersoll-Rand Research, Inc. (hereafter collectively called "plaintiff" or "Ingersoll-Rand"). The trial judge in a comprehensive opinion reported at 210 N.J. Super. 339 (Ch.Div. 1986) made extensive factual determinations which need only briefly to be reviewed here, since we accept these determinations which are amply supported by the record. Rova Farms Resort Inc. v. Investors Insurance Co., 65 N.J. 474, 483-484 (1974).
In October 1974, after two years' employment with another of plaintiff's subsidiaries defendant was hired as a program manager by Ingersoll-Rand Research. As a condition of his employment he signed an agreement assigning to his employer
... my entire right, title and interest in and to all inventions, copyrights and/or designs I have made or may hereafter make, conceive, develop or perfect, either solely or jointly with others either,
* * * * * * * *
(c) Within one year after termination of such employment if conceived as a result of and is attributable to work done during such employment and relates to a method, substance, machine, article of manufacture or improvements therein within the scope of the business of the COMPANY or any of its affiliates.
The products relevant to this litigation are a new type of friction stabilizer, developed by defendant, and a split-set friction stabilizer, manufactured and distributed by plaintiff. Both devices are used in the mining industry to prevent the separation of rock strata in mine roofs. Plaintiff, through sales of its patented split-set, has established a dominant position in the market with sales projected through the trial year at 3,000,000 units a *670 year at approximately $3 a unit. Although not then assigned to the manufacture of stabilizers, defendant submitted five proposals through 1975 for devices to support or stabilize mine roofs. Four of the five were not friction stabilizers, but one was an improvement to plaintiff's split-set.
From 1974 to March 1978 defendant worked in research capacities on products other than those relevant to this litigation. At the latter date he was promoted to manager of the friction stabilizer manufacturing unit dealing with the various outside manufacturing concerns fabricating the split set. He was fired on June 22, 1979 because of a conflict with his superior. He alleged that he left with no thought of developing a competing product, and no proof was offered to the contrary. Although he sought employment with other Ingersoll-Rand divisions, he was unsuccessful and then began a lengthy process of attempting to find other employment. Seven months later he found employment out of the industry with a firm which was experiencing serious financial difficulties, but that employment lasted only five months.
Defendant formulated his initial ideas concerning the new friction stabilizer while repairing a light fixture in his house approximately two months after he was fired. He filed his patent application nine months after termination and an improvement patent application a year after the initial filing. In February and March 1982 he was issued patents which the trial judge determined were encompassed by the agreement and must be assigned to plaintiff.
The trial judge made detailed factual findings establishing the basis for his determination that defendant's inventions were not based upon trade secrets or other confidential information of plaintiff. We need not recount the tribulations of defendant in achieving financing and his initial distribution of his product insofar as it relates to any claim of estoppel, laches, or unclean *671 hands. We accept the determination of the trial judge concerning these issues. 210 N.J. Super. at 357-358[1].
Post-employment restrictive agreements are enforceable in New Jersey but, in recognition of the difference in bargaining power of the parties, are subject to the scrutiny of the courts to balance the competing interests of the employer and employee. Such an agreement may be found "reasonable if it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 32-33 (1971); Solari Indus., Inc. v. Malady, 55 N.J. 571, 576, 585 (1970). The trial judge here determined that a post-employment contractual duty to assign to one's former employer any invention conceived within one year after termination of employment "would not necessarily have a direct impact on an employee's ability to seek and accept other employment." 210 N.J. Super. at 351. He found merely a "potential for a substantial indirect deterrent to alternative employment," insufficient to preclude enforcement of "holdover assignment agreements despite the inability of an employer to prove that a trade secret or confidential information has been pirated and utilized." Id. at 352. The judge found the Solari and Whitmyer test inapplicable to this situation.
*672 We disagree with the trial judge insofar as he would apply a test other than the one of reasonableness enunciated in Solari and Whitmyer and their progeny. See Karlin v. Weinberg, 77 N.J. 408 (1978); A.T. Hudson & Co. Inc. v. Donovan, 216 N.J. Super. 426 (App.Div. 1987); Dwyer v. Jung, 133 N.J. Super. 343 (Ch.Div. 1975), aff'd o.b. 137 N.J. Super. 135 (App.Div. 1975); Mailman, Ross, Toyes & Shapiro v. Edelson, 183 N.J. Super. 434 (Ch.Div. 1982). If the post-employment requirement to assign inventions is merely a specialized type of anti-competition agreement, we do not believe that under the facts of this case it can satisfy these tests. See Whitmyer, 58 N.J. at 33. It must, however, be reviewed as to its reasonableness, with an awareness of the practical realities of the business and employment world. An engineer in his 50's who for one year is required to assign to his former employer any inventions which might be conceived by him "as a result of and attributable to work done during his former employment relating to any method, substance, machine, article of manufacture or improvements therein" within the scope of his former business or any of its affiliates, most probably will remain unemployed in the same field for the proscribed period. Plaintiff's suggestion that defendant could have found employment in another field and avoided this problem adds little to the analysis. The effect of such a post-employment restriction is to lessen competition and keep potentially competitive products from the market. We, therefore, approach this question by applying legal principles different than those enunciated by the trial judge, but drawing upon his factual analysis of the status of plaintiff, defendant, the invention and the industry.
We first briefly focus upon the third prong of the Solari test. Although it is arguable that the public might obtain a safer or less expensive product if plaintiff's claim were rejected, we cannot, in light of the trial judge's findings concerning the friction stabilizer, determine that there would be such an adverse public impact if this covenant were enforced that we *673 would invalidate it on the public interest ground standing alone[2].
This case principally turns upon the first two parts of the Solari test, focusing upon the recognition of the legitimate interests of the employer, and the undue hardships of the employee which might require protection. There appear to be but two other reported New Jersey cases concerning a required post-employment assignment of an invention. Neither treats the questions presented here. See J.A. Migel Inc. v. Bachofen, 96 N.J. Eq. 608 (E. & A. 1924), and Andreaggi v. Relis, 171 N.J. Super. 203 (Ch.Div. 1979). Many years prior to the enunciation of the Solari test, the court in J.A. Miegel Inc. v. Bachofen balanced the interests of employer and employee in deciding what basically was an estoppel issue. Noting the apparent disinterest of the former employer and substantial expenditure by the employee to develop his invention, the court refused to order the assignment. 96 N.J. Eq. at 611. In Andreaggi, the invention was conceived and substantially concluded during employment, but a model was made and patent obtained thereafter; defendant was required to assign his rights to plaintiff. 171 N.J. Super. at 219-220, 228.
The initial focus of the Solari test is upon the protection of the employer's legitimate interests. In Solari the court first distinguished between a noncompetitive covenant designed to protect the good will of a business for a buyer against a seller, which is "freely enforceable in the courts," and a post-employment covenant not to compete. 55 N.J. at 576. "[A] covenant by an employee not to compete after the termination of his employment is not, because of the countervailing policy considerations, as freely enforceable;" it must be reasonable. Ibid. *674 Whitmyer Bros. Inc. v. Doyle, supra, expanded upon Solari to describe the legitimate interests of the employer which are deserving of protection. Specifically, the court noted "[t]he employer has no legitimate interest in preventing competition as such." 58 N.J. at 33. New Jersey has also expressed its antipathy to agreements which do little more than stifle competition not only in the cited judicial decisions but also in legislative enactments. See the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq., paralleling the federal Sherman and Clayton Acts having similar purposes. On the other hand, the court acknowledged an employer's "legitimate interest in protecting his trade secrets as well as his confidential business information and ... an equally legitimate interest in protecting his customer relationships."[3] 58 N.J. at 33. These rights, however, are limited, since
... matters of general knowledge within the industry may not be classified as trade secrets or confidential information entitled to protection nor will routine or trivial differences in practices and methods suffice to support restraint of the employee's competition.... [58 N.J. at 33-34].
The trial judge specifically found in the case before us that there was neither a trade secret nor confidential information employed by defendant in devising his invention. The trial judge relied, however, upon the reasoning of the Court of Claims in Dorr-Oliver, Inc. v. United States, 432 F.2d 447 (Ct.Cl. 1970), where, although the court refused to enforce a one-year holdover clause as to inventions on the facts before it, affirmed the enforceability of such a clause if the inventions relate to and stem from work done for a previous employer. *675 432 F.2d at 452. As stated in the Law Division opinion, the Dorr-Oliver
rationale appears to be posited in part on recognition of the sometime unstructured, informal and serendipitous processes that lead to invention. Processes that receive their impetus and inspiration from exposure to a subject and interaction with one's colleagues, co-employees and superiors. A process in which neither secrets nor confidential information plays a part. [210 N.J. Super. at 353].
We find a different analysis compelled by Whitmyer's treatment of its antecedents. There, the Supreme Court discussed and reaffirmed the result in A. Hollander & Son Inc. v. Imperial Fur Blending Corp., 2 N.J. 235 (1949), where a post-employment competition covenant was enforced on the basis of the use by the former employee of secret formulae and processing methods. Additionally, Whitmyer overruled Irvington Varnish, Etc. Co. v. Van Norde, 138 N.J. Eq. 99 (E. & A. 1946), stating: "we subscribe fully to [the Irvington Varnish] dissent." 58 N.J. at 35. In Irvington Varnish the trial court had found for the defendant declaring that the complainant failed to prove that defendant had received confidential information regarding his employer's machinery, equipment, processes and methods. The Court of Errors and Appeals reversed, the majority expressing the view that it was not necessary for the methods and processes later utilized by the employee to be secret in the sense that they were known only to the employer or to those to whom the employer chose to give the information. The dissent in Irvington Varnish, accepted by the Supreme Court in Whitmyer, urged that there were no unusual processes followed by the employer and stated that the effect of the majority opinion was to prohibit competition and deprive "the employee of the right to use his skill in the only industry of which he had knowledge." 138 N.J. Eq. at 106. The general skills and information gleaned by the employee from his prior employment are not proprietary rights of the former employer.
Ingersoll-Rand has a right to protect its trade secrets and other confidential information. Insofar as its friction stabilizer *676 business is based upon patent protection, it has the additional right to prevent competition utilizing even publicly disclosed information within the limits of the Patent Act. Although plaintiff has argued that defendant's inventions were within the ambit of plaintiff's patent, this is not the forum to litigate that question. If plaintiff wishes to attack defendant's patents or claim infringement of its own, it may do so[4].
The second-prong of the Solari test yields similar results. As noted in Whitmyer Bros. Inc. and in the dissent in Irvington Varnish, Etc. Co. v. Van Norde, which was approved in Whitmyer, an employee cannot be deprived of the right to use his general skills and knowledge. It is true that defendant had jobs in other industries prior to his employment with plaintiff; however, for the last several years he had devoted his professional time, energy and education to the mining industry. To enforce the agreement here under review would mean that any future employer within the mining industry who utilized defendant's services would be required to accept him knowing that any invention or improvement which he might develop could be lost if claimed by plaintiff to have been either directly or indirectly "conceived as a result of and ... attributable to work done during" his prior employment with plaintiff. It is not difficult to appreciate, therefore, why defendant had such difficulty in locating other employment following his dismissal by plaintiff[5]. The net effect of the agreement is to impose *677 upon the employee a prohibition, effective for one year over an unlimited geographical area, from working on mine supports for any company in the mining industry. If an employee does not possess sufficient wealth to bridge the one-year period, he may be forced into a different industry, a factor to be weighed under the Solari standards against any legitimate goals of the employer and the public interests.
Applying the balancing test, we determine that although the public interest segment may be neutral here, both other prongs of the test dictate our striking the provision requiring the assignment of the patents as directed by the Chancery Division. We recognize that in another case the balance may well be different if the particular invention concerns the thoughts and ideas developed by an employee while being paid by and using the resources of any employer. However, in this case where defendant was fired there can be no suggestion that defendant left plaintiff's employment to bring to fruition for his own benefit an invention substantially developed by him or his coemployees during his prior employment. Such a development process might well have been a trade secret. We recognize that there is a legitimate interest of the employer to foster the free exchange of ideas by its employees without fear that the employees will use trade secrets or confidential information learned during such interchange to the employer's disadvantage within a reasonable time following termination of the employment[6]. But the employer must show that the information *678 absorbed by the former employee was, in fact, proprietary, and, therefore, subject to the broad protection afforded trade secrets and other confidential information. Sun Dial Corp. v. Rideout, 16 N.J. 252, 260-261 (1954); Raven v. A. Klein & Co. Inc., 195 N.J. Super. 209, 213-214 (App.Div. 1984). Beyond this trade secret, confidential communication, and Patent Act protection, however, the employer's interests must give way to an employee's right to leave his job and use elsewhere those skills and that knowledge of the trade or industry he has acquired during his employment. Sun Dial Corp., supra, 16 N.J. at 261.
Defendant in this case has utilized our free-enterprise system. An employee who uses no confidential information imparted to him by his employer has every right to market competitive products and otherwise to compete with his former employer. Limitations on this right, expressed in contracts of adhesion, must be strictly construed against their drafters; whether phrased in terms of direct restrictions against competition or of imposition of other restrictions having similar anticompetitive effects, such limitations must be carefully analyzed applying the Solari/Whitmyer standards.
The judgment appealed from is reversed and the matter is remanded to the Chancery Division for the dismissal of plaintiff's complaint and for trial on defendant's counterclaim. No costs shall be awarded.
NOTES
[1] We observe that defendant's counterclaim filed pursuant to an earlier order of this court has been severed for separate trial and, therefore, little evidence was developed below concerning its allegations or defenses. Further, any evidence concerning plaintiff's damages in the event it prevailed was reserved until after final resolution of the liability issues here under review. The trial judge certified the judgment as final pursuant to R. 4:42-2. We suggest that the certification went beyond the fair import of that rule, and that the better practice would have been to grant a stay pending application for a motion for leave to appeal. Cf. Hodgdon v. Project Packaging Inc., 214 N.J. Super. 352, 360 (App.Div. 1986); Taylor By Wurgaft v. General Elec. Co., 208 N.J. Super. 207, 211 (App.Div. 1986), certif. den. 102 N.J. 379 (1986). Since, however, the matter has been fully developed and it is evident that such a motion if made would have been granted by us, we have accepted the case in its present posture, considering the notice of appeal as if it were one for leave to appeal. We grant such motion nunc pro tunc.
[2] Compare A.T. Hudson & Co. Inc. v. Donovan, supra, where on significantly different facts, this court was faced not with a balancing of the interests of the employer and employee but rather the rights of the commercial public to unrestricted choices of management consultants. We there refused to equate the management consultant-customer relationship with the professional relationships dealt with in Dwyer, Karlin and Mailman, Ross, and found no sufficient ground to overturn the contract on the basis of this test.
[3] Although as defendant has sold his stabilizers to plaintiff's customers, there is no question that the existence and requirements of the customers is not a trade secret, since there are published lists of mine operators. Moreover, this is not the type of case where protection of customer relationships could constitute a legitimate interest of a former employer. Whitmyer Bros. Inc. v. Doyle, supra, 58 N.J. at 38; compare Mailman, Ross, Toyes & Shapiro v. Edelson, supra, 183 N.J. Super. at 442-444, discussing a more restrictive test applicable to professional relationships.
[4] The trial judge made two specific factual findings on this issue:

(g) There is no evidence that defendant pirated trade secrets or utilized confidential information.
(h) There is no evidence that plaintiff's friction stablizer involved trade secrets. The principles involved in the stablizer's functioning had been freely discussed by Dr. Scott and others. The specifications and methods of manufacture are easily discoverable. [210 N.J. Super. at 354-355].
[5] We do not base this decision on the circumstances of defendant's dismissal. The record indicates that he was fired immediately following his refusal to participate in the distribution of products that he considered unsafe. See Pierce v. Ortho Pharmaceutical Inc., 84 N.J. 58 (1980); and cf. N.J.S.A. 34:19-1 et seq., effective September 5, 1986, expressing a similar legislative policy. Although at trial the issue of wrongful termination was partially explored, defendant sought no specific factual findings concerning this issue from the trial judge which might have justified his determining that plaintiff first breached its employment agreement with defendant, and that the post-employment covenant should have fallen as a result thereof.
[6] The trial judge stated that it might be difficult for a former employer to prove that trade secrets or confidential information were actually utilized by the former employee in a new invention. 210 N.J. Super. at 352. He held that under "some circumstances in equity and good conscience the fruits of the work of the former employee should belong to the former employer," despite the employer's inability to prove that a trade secret or confidential information had been pirated. 210 N.J. Super. at 353. Yet a plaintiff normally bears the burden of proof regardless of the difficulty, and there is nothing unsettling about requiring a former employer such as plaintiff in this case, with sufficient legal and technical resources at its disposal, to prove that defendant's inventions violated a patent or utilized a misappropriated trade secret or other confidential information.