216 N.J. Super. 426 (1987)
524 A.2d 412
A.T. HUDSON & CO., INC., PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
WILLIAM E. DONOVAN, DEFENDANT-RESPONDENT, CROSS-APPELLANT, AND JOHN GUGLIEMOTTI AND CITIZENS FIRST NATIONAL BANK OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1987.
Decided February 2, 1987.
*428 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and R.S. COHEN.
Joseph F. Kelly, Jr., argued the cause for appellant, cross-respondent.
No appearance on behalf of pro se respondent, cross-appellant, William E. Donovan (Respondent relied upon the brief filed by Antonio D. Favetta of the firm of Lamb, Hartung, Gallipoli & Coughlin).
The opinion of the court was delivered by COLEMAN, J.H., J.A.D.
This is an appeal by plaintiff A.T. Hudson & Co., Inc., a management consulting firm, from a judgment which nullified a post-employment restrictive covenant ancillary to an employment contract between defendant William E. Donovan and plaintiff. The trial judge held that the anti-competition clause in the employment contract violated the public policy of this State. We disagree and reverse.
Plaintiff corporation was formed in 1975 by James Conneen, Richard Cain and defendant William Donovan. Each owned one-third of the corporation. At the inception of the corporation the three principals agreed to have anti-competition clauses as part of their contracts of employment. The anti-competition clause in the employment contract provided:
5. For a period of two (2) years after you leave the employ of the Company, you will not directly or indirectly, for yourself or for any other Business Entity, solicit any business from, or render any services to:
(a) Any Business Entity which has been a Customer of the Company at any time or from time to time during the two (2) year period prior to the date of termination of your employment with the Company. .. .
*429 As a management consulting firm, plaintiff was engaged primarily in reorganizing the management of its clients' businesses. Plaintiff would solicit customers and if retained it would determine the weaknesses in the client's organization and then work with managers to help the client improve the work product. This objective was undertaken primarily through on-the-job work with the managers of the client's business.
Soon after the formation of the plaintiff corporation, Cain started contacting Bank of America with the intention of soliciting its business. Cain made numerous telephone calls to different people at the bank, and it took him approximately 15 to 18 months to reach the right person, Tony Matthews, the head of the bank's Internal Methods Department. Following Cain's contact with Matthews, the bank engaged plaintiff to perform a productivity improvement program for its data center in San Francisco at a cost of $260,000. Plaintiff did additional work for the bank in California and in England.
Donovan ended his association with plaintiff on September 28, 1980. In early 1981 he formed a partnership with two others to develop and acquire oil and gas producing properties; at that time he was not doing any business as a management consultant. He did, however, form a corporation called William E. Donovan Associates, Inc., anticipating that he might start doing management consulting again.
Donovan Associates did not become active until about May 1981 when defendant hired Viola Swihart to begin making telephone calls to the Buffalo/Rochester, New York area to solicit business. Swihart was an experienced telemarketer and used the standard directories to find potential clients. Swihart, who worked from her California home, would contact defendant to tell him if she had made an appointment for him with an interested party. Defendant was living in both Bradford, Pennsylvania and Denver, Colorado at the time; he was not present when Swihart made her calls and had very little actual contact *430 with her. Except for those companies with which Swihart had made appointments, defendant did not know whom she had contacted.
As of September 28, 1980, the date that defendant left plaintiff's employ, Bank of America was plaintiff's customer; plaintiff was either in the process of performing under a contract or soliciting one. At that time, Joseph Hartley was working both as a salesman and director of operations for plaintiff. He was assigned to work on Bank of America's account and, during 1982, was actively soliciting more of the bank's business.
On February 23, 1982, Hartley made a sales call on plaintiff's behalf to R.A. Lemos, a vice-president of Bank of America. As Hartley explained the nature of his consulting services to Lemos, Lemos told him that he knew about plaintiff because he had been visited recently by defendant, who tried to sell his management consulting services to Bank of America. Defendant gave as references the names of Whit Connelly, an executive at Bank of America, and the Imperial Bank, both clients that defendant had served while working for plaintiff. Subsequently, on March 3, 1982, Hartley also met with Elizabeth Strohl, another vice-president at Bank of America. Strohl told Hartley that defendant had called her and that she was going to meet with him to discuss doing a consulting project.
Defendant's telephone records substantiated Hartley's assertions that defendant and his agent, Viola Swihart, had telephoned Lemos at Bank of America on August 3, 4, 8, and 20, 1982. Swihart had also placed calls to Elizabeth Strohl on August 4 and 24, 1982. She had called Fran Wetzel at Bank of America on August 20 and 23, 1982. The parties stipulated that by a contract dated January 1983 and the subsequent consulting contract, defendant agreed to render services to Bank of America which were of a nature generally similar to the services that plaintiff had rendered. Defendant admitted contacting R.A. Lemos of Bank of America to perform consulting *431 work for the Business Services Marketing Department. He denied soliciting the Business Service Division prior to September 28, 1982. In December 1982 defendant was hired to perform services for the Business Service Division. Defendant's analysis was completed in February 1983 and the consulting project was commenced in March 1983.
On March 19, 1982, plaintiff filed a two count complaint alleging that Donovan had breached the anti-competition clause in his employment contract with plaintiff by forming his own consulting firm and soliciting business from Bank of America, one of plaintiff's customers. Plaintiff sought damages, costs and an order enjoining Donovan from soliciting business from plaintiff's customers or divulging confidential secrets. The Citizens First National Bank and John Gugliemotti, a bank officer, were named as defendants because they were custodians of some of Donovan's assets. Plaintiff has heretofore dismissed its claim against that bank and its officer.
The trial was conducted over a four-day period. During the trial the parties stipulated that the gross amount of defendant's contract with Bank of America was $195,000. Defendant's salary was $18,300, and the profit after deducting his salary was $22,362. Adding the net profit to defendant's salary, the total was $40,662, and the parties agreed that plaintiff's damages would not exceed that amount.
At the end of the trial the judge issued a letter opinion dated October 9, 1985 in which he made detailed factual findings and conclusions of law. He found that defendant breached the restrictive covenant by soliciting plaintiff's customers within the prohibited two year period. The judge rejected defendant's contention that Bank of America, because of its size, could not be considered one single customer but was instead various discrete departments and divisions. The judge also concluded that Swihart was defendant's agent regardless of whether she was defendant's employee or an independent contractor. He further found that the employment contract, which included the *432 restrictive covenant clause, had been supported by adequate consideration. Finally, the judge found that Donovan and his agent Swihart had solicited Bank of America in violation of the restrictive covenant. He found that plaintiff was not entitled to any relief, however, because the covenant was void under the public policy of this State.
Based on our careful study of the record we are completely satisfied that all of the factual findings set forth in the letter opinion are supported by sufficient credible evidence in the record as a whole and we will not disturb those findings. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974). We therefore find that the cross-appeal is clearly without merit. R. 2:211-3(e)(1)(A) and (E).
The real issue in this appeal is whether the anti-competition covenant violated our public policy. We begin our analysis with the seminal case of Solari Industries, Inc. v. Malady, 55 N.J. 571 (1970). Solari teaches that an anti-competition agreement in a commercial setting is enforceable to the extent that it is reasonable under the circumstances. Id. at 585. Solari establishes a three pronged test for determining whether the agreement is reasonable: (1) it must be necessary to protect the parties legitimate interests; (2) it must cause no undue hardship on the former employee, and (3) it must not impair the public interest. Ibid. The trial judge found that the first two prongs of the test were satisfied in the present case. Those findings are supported by the record and we will not disturb them. Rova Farms Resort, supra, 65 N.J. at 484.
The trial judge concluded that the third prong of the Solari test had not been established because the commercial public has the right to an unrestricted choice of management consultants. He reasoned that the relationship between consulting firms and their clients is of a highly personalized nature so that the right of the customer (the commercial public) to choose its consultants should not be restricted. The judge agreed that "a covenant which attempts to `protect' the clients from contact *433 with the former employee operates to restrict the solicitation rights of the public. Such a covenant, in effect, binds those who were never parties to the agreement." Mailman, Ross, etc. v. Edelson, 183 N.J. Super. 434, 442 (Ch.Div. 1982). While acknowledging that the relationship between plaintiff, defendant and their customers was not the same as the confidential and fiduciary relationship which exists between lawyers and clients or doctors and patients, the judge nonetheless found "that the nature of the customers' interests is such that it should not be restricted." In so finding, he granted absolute protection to the interest of the customers to the total disregard of the interest of the employer.
Our disagreement with the decision declaring the restrictive covenant void is based upon the trial judge's failure to balance the competing interest of the customers against plaintiff's business interest. The judge gave too little consideration to the significant business interest of plaintiff which the covenant was designed to protect. While an employer may not prevent competition as such, he does have a legitimate interest in protecting his customer relationships. Karlin v. Weinberg, 77 N.J. 408, 417 (1978); Whitmyer Bros., Inc. v. Doyle, et al., 58 N.J. 25, 33 (1971). In Solari, the employer complained that the former employee represented a substantial risk to its relationships with its customers. Although the Supreme Court did not grant a preliminary injunction, it remanded the matter for full exploration of the material facts, suggesting that upon development of the record, the appropriate remedy might be "a limited restraint against [the employee's] dealing with any of Solari's actual customers or prospective customers in the United States with whom he had substantial dealings on Solari's behalf while in Solari's employ." Solari, supra, 55 N.J. at 586.
We recognize that the nature of the consulting business involves close contact between the consultants and the management employees of the client. It is a personalized service giving rise to an interest in the public to choose among competing providers. But the record in the present case contains a *434 great deal of evidence indicating that consulting firms expend great energy and money in soliciting clients and developing projects for their benefit. Each client that plaintiff is able to attract represents a significant investment of time, effort and money which is worthy of protection. On the other hand, the record does not indicate that customers experienced any real difficulty locating other consulting firms capable of rendering the same services as Donovan. Unlike the relationship that exists between an attorney and client, Dwyer v. Jung, 133 N.J. Super. 343 (Ch.Div.), aff'd o.b. 137 N.J. Super. 135 (App. Div. 1975), or a doctor and patient, Karlin, supra, 77 N.J. 408, or an accountant and client, Mailman, supra, 183 N.J. Super. 434, the commercial standard set forth in Solari controls this case. Application of that standard compels the conclusion that the covenant in this case was not unreasonably injurious to the public.
The judgment dismissing the complaint is reversed. The matter is remanded to the Law Division for the entry of an appropriate judgment in favor of plaintiff. We do not retain jurisdiction.