MEADOX MEDICALS, INC.

v.

LIFE SYSTEMS, INC.

No. CIV. A. 97–3001 NHP.

United States District Court,
D. New Jersey.

May 11, 1998.

Benjamin Haglund, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, William N. Berkowitz, Mark W. Batten, Sarah E. Marston, Bingham, Dana, LLP, Boston, MA, for Plaintiff.

Michael L. Rich, Dillon, Bitar & Luther, Morristown, Robert Watkins, Marco, Watkins & Owsiany, Grosse Point, MI, for Defendant.

*SECOND AMENDED LETTER OPINION*
*ORIGINAL ON FILE WITH CLERK*
*OF THE COURT*

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on cross-motions for summary judgment as to defendant Life System, Inc.'s liability for breach of a covenant not to compete with plaintiff Meadox Medicals, Inc.[1] Defendant has also cross-moved for leave to file anti-trust counterclaims. Both parties have moved to strike particular affidavit testimony from the record. For the reasons explained more fully below, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**. The motions to strike testimony, as well as defendant's motion for leave to file a counterclaim, are **DISMISSED AS MOOT**.

### FACTUAL BACKGROUND

Life Systems, Inc. ("LSI") was for many years the exclusive distributor of Meadox Medical, Inc.'s ("Meadox") vascular graft products in Michigan and Ohio. The last contract between Meadox and LSI was executed on or about December 6, 1994, and granted LSI the exclusive right to distribute the grafts in its territory between January 1, 1995 and December 31, 1996. *See* Distributor Appointment Letter, attached as Exhibit A to Declaration of Mark W. Batten.

The agreement contained a promise by LSI that it would not offer products competitive with Meadox's during the term of the contract and for one year thereafter:

> [N]either the Company [LSI] nor any of its subsidiaries, parents, principals, stockholders or affiliates, will, for itself or on behalf of any person, firm, entity or corporation other than [Meadox], directly or indirectly, offer for sale or solicit orders for, within the Territory, any products or services the intended use of which is competitive with those Products offered by [Meadox].

Distributor Appointment Letter, § 3. In the event that the contract was terminated or otherwise expired, LSI further agreed "to cooperate with [Meadox] in an orderly winding up of [LSI]'s affairs with Meadox and extend all reasonable assistance to any successor for its territory," *id.* at § 10(a), which also required LSI to introduce the new representatives to the customers. *See id.* at § 10(b).

Meadox decided not to extend the contract beyond its natural expiration on December 31, 1996. As Meadox informed LSI in May 1996, Meadox had decided to sell its products directly, without an intermediate distributor, beginning no later than January 1, 1997. *See* Letter attached as Exhibit E to Batten Decl.

In August of 1996, Michael Wierzbinski, LSI's President, Chief Operating Officer, and Treasurer, discussed with Vice–Presidents Peter Molina and Michael DeMars the possibility of starting a separate company to sell the Meadox-competitive products that LSI could no longer sell itself. *See* Wierzbinski Dep. 48–49, Molina Dep. 55:3–9, DeMars Dep. 61:23–62:4, attached as exhibits to Deposition Excerpts Submitted in Support of Plaintiff's Motion for Summary Judgment. The three officers expressly discussed LSI's non-competition obligations to Meadox, and concluded that "any contractual obligations that Life Systems had with Meadox would not affect [them]." Wierzbinski Dep. 60:20–25.

The LSI executives also sought permission from LSI's shareholders, David Blake and Sheldon Davis, to establish the new company, "Orion Medical," to market the products of Impra, Vascutek, and Baxter, each of which makes grafts that compete with Meadox products. *See* Wierzbinski Dep. 51:20–53:8, Blake Dep. I:17:24–I:19:14, II:49:21–II:50:2. Indeed, Sheldon testified that he and Blake were pleased by the Orion proposal, because they feared that LSI's non-compete agreement with Meadox would drive LSI's sales force to other companies. *See* Davis Dep. 52:7–53:13, 55:6–56:23.

In September 1996, Wierzbinski, Molina, and DeMars attended a one and a half day trade conference in Chicago and spoke with numerous Meadox competitors about the

---

1. Meadox seeks an injunction and money damages.

prospect of selling their products. Wierzbinski incorporated Orion Medical, Inc. the same month. Shortly thereafter, Wierzbinski, still LSI's president, entered into a distribution agreement on behalf of Orion with Vascutek and Baxter Healthcare Corporation—both of which compete with Meadox.

In mid-December, 1996, just weeks before the expiration of the Distribution Agreement, LSI's officers hosted an "Orion Medical/Life Systems Sales Meeting" in Indianapolis, which was attended by the LSI sales representatives who had been invited to sell on behalf of Orion. The agenda, drafted by Molina and printed on LSI letterhead, welcomed the LSI employees to "the first annual meeting of Orion Medical." Exhibit 1 to Batten Decl.

After the "Orion/Life Systems Sales Meeting," Wierzbinski, Molina, and DeMars resigned as officers of LSI, but remained as "consultants." They marketed Meadox-competitive products through "independent Orion representatives"—all of whom are still full-time employees at LSI. Indeed, it appears that the only products Orion sells are the Meadox-competitive grafts that LSI is prohibited from selling.

## DISCUSSION

### I. Covenant Not To Compete

#### A. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may only be granted if, drawing all inferences in favor of the nonmoving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of

material fact. *Id.* Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact. To defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir.1995).

#### B. Applicable Law

■ As this case arises under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1331, the Court will resolve the motions in accordance with the substantive laws that would be applied by a New Jersey court in this case. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The contractual relationship between Meadox and LSI is subject to a choice of law provision, which designates New Jersey law as the controlling legal authority. New Jersey courts rely upon Section 187 of the Restatement (Second) of Conflicts of Laws in determining whether to enforce such a clause. *See Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc.*, 196 N.J.Super. 16, 21–22, 481 A.2d 553 (App.Div.1984), *aff'd*, 98 N.J. 266, 486 A.2d 334 (1985). Since neither party objects to the choice of law provision, and since its enforcement would not violate a fundamental policy of the State of New Jersey, the Court will decide the dispute in accordance with New Jersey substantive law. *See Conopco, Inc. v. McCreadie*, 826 F.Supp. 855, 864 (D.N.J.1993), *aff'd*, 40 F.3d 1239 (3d Cir.1994).

#### C. Enforceability of Covenant

This Court is confident that LSI's executive officers established Orion for the specific

purpose of circumventing LSI's covenant not to compete with Meadox. It is a transparent sham. Nevertheless, the outcome of the instant summary judgment motions turns upon whether the covenant is enforceable under New Jersey law.

New Jersey courts will only enforce covenants not to compete that are reasonable. *See Solari Industries, Inc. v. Malady*, 55 N.J. 571, 264 A.2d 53 (1970). A party seeking to enforce such an agreement must establish its reasonableness under *Solari*'s three-pronged standard: (1) the covenant must be necessary to protect the parties' legitimate interests; (2) it must cause no undue hardship on the former employee; and (3) it must not injure the public interest. *See A.T. Hudson & Co. v. Donovan*, 216 N.J.Super. 426, 432, 524 A.2d 412 (1987)(citing *Solari*, 55 N.J. at 585, 264 A.2d 53).[2]

In this case, Meadox asserts two legitimate interests that, in its view, justify enforcement of the covenant: Meadox's confidential pricing information and strategies, and its customer relationships. Meadox contends that defendants misappropriated this proprietary information in violation of the covenant.

An employer's customer relationships and confidential pricing strategies may be protected through restrictive covenants. *See Ingersoll–Rand Co. v. Ciavatta*, 110 N.J. 609, 626, 542 A.2d 879 (1988). To be judicially protected under New Jersey law, "misappropriated information need not rise to the level of the usual trade secret," and indeed, may otherwise be publicly available. *Platinum Management, Inc. v. Dahms*, 285 N.J.Super.

274, 295, 666 A.2d 1028 (Law Div.1995). However, the "validity and enforceability of the covenant is fact-sensitive and must be determined in light of the facts" of this case. *Id.* at 294, 666 A.2d 1028.

Meadox products are purchased by doctors and hospital administrators. While the identity of these customers is in some sense publicly available, Meadox contends that the names of the individuals responsible for making purchasing decisions, their buying habits, and the procedures according to which such purchases are made, are proprietary to Meadox. In addition, Meadox believes that its pricing strategies are protectable by the covenant. While New Jersey courts have enforced agreements prohibiting misappropriation of such information, "[t]he key to determining the misuse of the information is the relationship of the parties at the time of disclosure, and its intended use." *Platinum Management*, 285 N.J.Super. at 295, 666 A.2d 1028; *see also Zippertubing Co. v. Teleflex, Inc.*, 757 F.2d 1401, 1407–10 (3d Cir.1985).

In *Platinum Management*, the defendant employee had been a high level executive within the plaintiff company, and he had enjoyed special access to the company's customer information. *See* 285 N.J.Super. at 294, 666 A.2d 1028. "Additionally, unlike many sales agents, [defendant] did not arrive with his customers; virtually all of his customer relationships were developed on [plaintiff's] payroll." *Id.* Moreover, as was the case in *A.T. Hudson*, the plaintiff company had "expended substantial energy and money, either through [defendant] or otherwise,

2. The Court rejects Meadox's contention that the covenant's validity should be assessed under the more relaxed "sale of business" standard. *See Solari*, 55 N.J. at 576, 264 A.2d 53 (stating that "a seller's incidental noncompetitive covenant, which is designed to protect the good will of the business for the buyer, is freely enforceable in the courts"). Meadox believes that the sale of business standard is more appropriate because: (1) LSI is not a former Meadox employee, but rather is an independent and sophisticated corporate entity; and (2) Section 10 of the Distributor Appointment Letter, which requires LSI to assist Meadox's transition upon termination of the Agreement, is essentially a transfer to Meadox of LSI's good will.

It seems clear that New Jersey courts would reject Meadox's position. New Jersey courts freely enforce restrictive covenants against sellers of businesses because the buyers paid separate consideration for the sellers' good will, which is protected through the covenant. In such a case, the buyer is in essence purchasing the seller's customer relationships outright. The restrictive covenant protects the buyer's bargained-for assurance that the seller will not retain that which he has sold.

In this case, Meadox did not purchase any part of LSI's business, nor did Meadox pay LSI any consideration for the restrictive covenant. In sum, the Meadox–LSI distributorship agreement falls within neither the letter nor the rationale of the sale of business standard.

in soliciting the actual customers involved herein—a matter 'worthy of protection.'" *Id.* at 296, 666 A.2d 1028 (quoting *A.T. Hudson*, 216 N.J.Super. at 434, 524 A.2d 412).

■ Here, the Meadox–LSI relationship is fundamentally different from the typical *Solari* case because LSI did not develop customers while on Meadox's payroll. Rather, LSI was an independently owned distributor who purchased products from Meadox and then resold those products to doctors and hospitals. LSI developed its own customer contacts, and Meadox conceded at oral argument that it did not help LSI to solicit customers. Indeed, Meadox's Distributor Appointment Letter clearly contemplated such an arrangement:

> **Section 13. NATURE OF AGREEMENT.** It is understood and agreed that, except as specifically set forth in this Agreement, so long as [LSI] is a [Meadox] distributor, it will retain control over all of its own methods o[f] operation, including its organization, management, marketing plans, or business affairs. [LSI]'s appointment as a [Meadox] distributor is in recognition of its substantial expertise in product lines such as those sold by [Meadox]. As a result, except for the promotional support specified in this letter, [Meadox] anticipates that [LSI] is in a position to act as a [Meadox] distributor without significant assistance. In turn, [LSI]'s appointment as a [Meadox] distributor will not require payment of any money or other fee for the right to sell the Products.

Exhibit A to Batten Decl., at 7.

■ What an employee brings to his employer, he should be able to take away. *Coskey's Television & Radio Sales and Service, Inc. v. Foti*, 253 N.J.Super. 626, 637–39, 602 A.2d 789 (App.Div.1992). Meadox may not protect through a restrictive covenant customer information that it did not, either directly or indirectly, assist in developing. *See id.* at 638–39, 602 A.2d 789 (refusing to enforce restrictive covenant to the extent that it purported to protect customer relationships that plaintiff had neither purchased from defendant nor earned through its own efforts); *see also A.T. Hudson*, 216 N.J.Super. at 433–34, 524 A.2d 412. LSI developed

its customer relationships solely through its own efforts and expenses. The fruits of that labor are not proprietary to Meadox. As the Appellate Division observed in *Coskey's*,

> [t]his is little different than the tradesman who brings his tools to his employer and upon separation leaves with them, or a scientist who has entered into an employment relationship with a head full of scientific data which he used for the benefit of his employer and then may use for the benefit of another upon reemployment.

*Id.* at 637–38, 602 A.2d 789.

LSI's customer relationships were not developed with any assistance from Meadox, nor were they bought and paid for by Meadox. *See id.* at 638, 602 A.2d 789. LSI's customer relationships were merely rented during the period of the distributorship. *See id.; see also Subcarrier Communications, Inc. v. Day*, 299 N.J.Super. 634, 642, 691 A.2d 876 (App.Div.1997)(stating that "customers are not assets where company is a manufacturer or wholesaler dealing with jobbers or retail merchants"). The fact that LSI acquired customers while acting as a Meadox distributor does not change this analysis.

Finally, Meadox's claim of a proprietary interest in LSI's customer relationships is substantially undercut by the language of the Distributor Appointment Letter, drafted by Meadox, which appears to acknowledge LSI as the rightful owner of its customer contacts:

> **Section 8. RECORDKEEPING.** (a) [LSI] will, within five (5) working days of the end of each calendar month during the Term ... provide to [Meadox] a complete listing of the following information ... (i) list of customers/hospitals by name and address; (ii) products purchased by each by catalogue number and batch number insuring traceability; and (iii) returns made by each by catalogue number and batch number. (b) *[Meadox] agrees that such information shall be held confidential* so long as: (I) the information is not in the possession of [Meadox] prior to its disclosure by [LSI]; (ii) the information does not thereafter enter the public do-

main without violation of *the [Meadox] obligation of confidentiality;* (iii) the Term has not expired or been otherwise terminated; and (iv) the information is not necessary for a regulatory agency.

Distributor Appointment Letter, attached as Exhibit A to Batten Decl., at 4 (emphasis added). In this Court's view, Section 8 perfectly illustrates the relationship between Meadox and LSI viz. customer contacts: LSI developed customer information and contacts solely through its own efforts, and Meadox could access that information only if it promised confidentiality. To the extent that either party has a proprietary interest in the customer relationships, the Appointment Letter clearly contemplates that that information rightfully belongs to LSI, not Meadox.

For all these reasons, the Court finds the restrictive covenant to be unenforceable in this case because Meadox lacks a protectable interest in the information it seeks to protect.

With regard to LSI's cross-motion for leave to add several antitrust counterclaims, those claims are now moot because the alleged antitrust violations are predicated upon Meadox's attempt to enforce the covenant not to compete.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment dismissing plaintiff's Complaint is **GRANTED,** plaintiff's motion for summary judgment is **DENIED,** defendant's motion for leave to file a counterclaim is **DISMISSED AS MOOT,** and the cross-motions to strike testimony are **DISMISSED AS MOOT.**