J-A19010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TYCO FIRE PRODUCTS, L.P. D/B/A "TYCO FIRE PROTECTION PRODUCTS" AND TYCO INTERNATIONAL MANAGEMENT COMPANY, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RALPH M. FUCHS, | |
| Appellant | No. 20 EDA 2017 |

Appeal from the Order Entered November 21, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2016-07384

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 17, 2017**

Appellant, Ralph M. Fuchs, appeals from the November 21, 2016 order which granted a petition for a preliminary injunction filed by Appellee, TYCO Fire Products, L.P., d/b/a TYCO Fire Protection Products and TYCO International Management Company, LLC ("TYCO").[1]  After careful review, we affirm.

The trial court summarized the relevant facts and procedural history of this case in its Pa.R.A.P. 1925(a) opinion, as follows:

> TYCO is a worldwide company which designs, manufactures and distributes chemical, water and mechanical

_____

[1] An order granting a preliminary injunction is immediately appealable pursuant to Pa.R.A.P. 311(a)(4).

products for the fire protection and building products businesses. [Appellant] was employed by TYCO, first as a sales manager and then as a senior sales manager, from February 27, 2006 through January 6, 2016. [Appellant's] sales territory as a senior sales manager was the Northeast region, consisting of Pennsylvania, West Virginia, Delaware, New York, New Jersey, Maine, Massachusetts, New Hampshire, Vermont, Rhode Island and Maryland.

On February 17, 2006, prior to beginning his job at TYCO, [Appellant] signed an Employee Confidentiality Agreement and a Non-Competition Agreement (hereinafter "NCA"). The NCA contains a Confidentiality Clause … and a Non-Competition Clause[.] The Non-Competition Clause provides[:] "I agree, subject to the conditions stated, that I will not within twelve months after leaving [TYCO] employ, engage or enter into employment by, or self-employment or gainful occupations, a Competing Business or act directly or indirectly as an adviser, consultant or agent or representative for a Competing Business." The NCA expressly provides for the entry of injunctive relief in the event of any breach of the agreement by [Appellant]. In 2015, [Appellant] signed another employment agreement which contained a non-competition restriction and provided for injunctive relief [("2015 Agreement")].

[Appellant] testified that he read and signed these three Agreements in connection with his employment with TYCO. He further testified that he understood that two of these Agreements contained non-compete provisions and non-solicitation provisions. He understood that the third Agreement he signed was a confidentiality agreement that provided for the protection of TYCO's confidential information and trade secret information. [Appellant] testified at his deposition that he was provided with access to TYCO's Salesforce Customer Relations Management Software, "which is a database of all the accounts TYCO had information about."

In January of 2016, [Appellant] resigned from his position at TYCO and went to work at [Reliable Automatic Sprinkler Company, Inc. ("Reliable")]. Reliable is in the same type of business and is a competitor of TYCO. After his resignation from TYCO, [Appellant] received a letter from counsel for TYCO reminding him of his legal obligations under the NCA.[1] The letter also informed [Appellant] that TYCO believed that by accepting

- 2 -

employment with Reliable, [Appellant] was in violation of his contract.[2]

> [1] The evidence presented showed that both [Appellant] and Reliable were well aware of the issues raised by [Appellant's] employment with Reliable….
>
> [2] After receipt of this letter, and after similar correspondence was sent to Reliable, [Appellant] was moved to work on an "internal project" by Reliable. [Appellant] testified that there was nothing "physically preventing" him from continuing to work on this internal project for a year. In addition, [Appellant] testified that he was aware that there were four other Reliable sales regions in addition to the Northeast territory and even states in the Northeast territory where he could legally work if the injunction were entered.

> While working for Reliable, [Appellant] accompanied other Reliable employees to see customers in places located in the states covered by his restrictive covenant. Several of these customers [Appellant] visited were TYCO customers, and although he testified he personally was not soliciting business while on these sales calls, [Appellant] agreed that the purpose of these visits was to sell Reliable products. In addition, [Appellant] testified that he met with several of his former TYCO customers while working at Reliable. [Appellant] also acknowledged an e-mail exchange he had with a friend who, when told by [Appellant] that he was taking a job with Reliable, asked, "what about the non-compete?" [Appellant] responded, "yea, going to be rolling the dice somewhat, but there is a backup plan."

Trial Court Order ("TCO"), 1/26/17, at 2-4 (citations to record omitted).

On April 13, 2016, TYCO filed a complaint in the Court of Common Pleas of Montgomery County, seeking a preliminary injunction to restrain Appellant from working in the eleven (11) states which make up his former TYCO sales territory, for any company engaged in the same business as TYCO, including Appellant's current employer, Reliable. *Id.* at 1. TYCO then

filed a motion for a preliminary injunction, and a hearing was held on the matter on November 1, 2016. *Id.* Based on the evidence presented at the hearing, Appellant's testimony, and the testimony of TYCO and Reliable customer, Carlos Antonia Fleming ("Mr. Fleming"), the trial court entered an order on November 21, 2016, granting the preliminary injunction. The order provided, in relevant part:

1. [Appellant] is hereby enjoined from employment with, or providing services in any sales capacity, including management of a sales team, either directly or indirectly to [Reliable] or any of its affiliates, parents, subsidiaries, or employees, in Pennsylvania, West Virginia, Delaware, New York, New Jersey, Massachusetts, Maine, New Hampshire, Vermont, Rhode Island, Ohio or Maryland ("TYCO Sales Territory") for a [o]ne[-y]ear time period from the date of this Order.

2. [Appellant] is hereby enjoined from soliciting or inducing any TYCO [c]ustomer, either directly or indirectly, to purchase the goods and/or services of any other person or entity that is engaged in the same or similar lines of business as TYCO for a two[-]year period of time from the date of the Order.

3. [Appellant] is hereby enjoined from misappropriating, using and/or disclosing TYCO's [c]onfidential [i]nformation or [t]rade [s]ecrets;

4. [Appellant] is hereby enjoined from seeking or accepting employment with, or from providing services either directly or indirectly to, any other person or entity that is engaged in the same or similar business as TYCO in his former TYCO Sales Territory for a one[-]year time period from the date of this Order.

5. [Appellant] shall return to TYCO any and all[] information, documents, software, materials, work product[,] or equipment provided to him by TYCO or taken by him from TYCO or relating to TYCO, whether in printed or electronic form or otherwise.

- 4 -

*Id.* at 4-5.

On December 17, 2016, Appellant filed a timely notice of appeal and now presents the following issues for our review:

1. Did [TYCO] prove that, in order to protect [TYCO] from irreparable future harm, it was reasonably necessary to preliminarily enjoin [Appellant], for a period of one year, from acting in any sales capacity for [Reliable] in [Appellant's] former [TYCO] sales territory?

2. Did [TYCO] prove that, in order to protect [TYCO] from irreparable future harm, it was reasonably necessary to preliminarily enjoin [Appellant], for a period of two years and anywhere in the world, from directly or indirectly seeking to sell or selling products to any [TYCO] customer, regardless of whether [Appellant] had any contact with or knowledge of those customers during his employment at [TYCO]?

3. Did the trial court abuse its discretion by ordering that the periods of prohibition under its injunction would commence running on the date the order was entered, rather [than] on the contractually specified termination date of [Appellant's] employment at TYCO, thus expanding the injunctive provisions by a period of almost a year?

Appellant's Brief at 4-5.

In reviewing the grant of a preliminary injunction, we are guided by the following principles:

> As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [court].

***Allegheny Anesthesiology Associates, Inc. v. Allegheny General Hosp.***, 826 A.2d 886, 891 (Pa. Super. 2003) (quoting ***Shanaman v. Yellow Cab Co. of Philadelphia***, 421 A.2d 664, 666 (Pa. 1980)).

We have also established that:

> To obtain a preliminary injunction, a petitioner must establish that: (1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the public interest will not be harmed if the injunction is granted.

***Shepherd v. Pittsburgh Glass Works, LLC***, 25 A.3d 1233, 1241 (Pa. Super. 2011). "In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." ***Id.*** at 1244.

Here, Appellant argues that the preliminary injunction entered by the trial court was an abuse of discretion on the grounds that "TYCO failed to demonstrate that it would suffer immediate and irreparable harm if the injunction was not entered." Appellant's Brief at 16. Appellant suggests that rather than provide actual proof of irreparable harm, TYCO inadequately presented mere speculation about the remote possibility of future harm. ***Id.*** at 22. Moreover, Appellant asserts that the restrictions imposed by the

preliminary injunction were "neither reasonably necessary for TYCO's protection nor reasonably limited in duration and geographic reach." *Id.* at 17. After careful review, we deem Appellant's claims to be meritless.

In support of its decision to grant the preliminary injunction against Appellant, the trial court provided the following thorough and well-reasoned explanation:

> TYCO has established its right to enforcement of the restrictive covenants [Appellant] signed. TYCO is likely to succeed in its claim against [Appellant] for breach of his agreement because[:] (1) the non-compete agreement is valid and enforceable; and (2) [Appellant] signed the agreement and admitted in his testimony and pleadings that he was aware of the agreement and its requirements and that it was a condition of his employment; (3) [Appellant] breached his obligations under his respective agreements by working for Reliable, which is a competitor of TYCO; and [Appellant] was making calls on TYCO customers while working for Reliable in the territory where he [had] worked for TYCO, which is the area covered by the NCO [*sic*]. The evidence in this case, including [Appellant's] own testimony[,] shows that the covenants which are at issue were incident to [Appellant's] employment with TYCO. [Appellant] clearly executed his agreement as a condition of full-time employment, making it incident to this employment and supported by adequate consideration.
>
> Second, the restrictive covenants in the non-compete agreements are reasonably necessary for the protection of TYCO's legitimate business interests. The evidence shows that TYCO and Reliable, [Appellant's] new employer, compete for the same business. Further[,] [Appellant] has testified that after he began working for Reliable[,] he visited customers that he had visited while working for TYCO.
>
> Third, the time duration and geographic range of the restrictions are reasonable. [The] Agreement in this case restricts [Appellant's] employment for one year. Non-compete restrictions longer than one year are routinely upheld as reasonable in Pennsylvania. *See Worldwide Auditing Serv's,*

*Inc. v. Richter*, 587 A.2d 772 (Pa. Super. [] 1991) (upholding two-year restriction); *see also John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164 (Pa. 1977) (upholding three-year restriction). Furthermore, the restriction's geographical scope is the territory in which [Appellant] acted as TYCO's sales manager immediately before leaving TYCO. This restriction is reasonable based on the nature of the work done by [Appellant] at TYCO, visiting customers in these geographic areas. The testimony shows that Reliable has five sales territories, and [Appellant] is only precluded from working in one of these territories. Accordingly, for all of the above reasons, TYCO is likely to prevail on the merits.

TYCO will suffer immediate and irreparable harm if [Appellant] is not enjoined because violating a restrictive covenant such as this clearly constitutes irreparable harm. As the Pennsylvania Supreme Court has specifically explained in [*Sling Testing*], 369 A.2d [at] 1167 … [,]

[i]t is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention.[2]

_____

[2] Appellant avers that the trial court misapplied *Sling Testing* to the instant matter, and suggests that our Supreme Court clarified in *New Castle Orthopedic Assocs. v. Burns*, 392 A.2d 1383, 1387 (Pa. 1978), that it is an error for a trial court to merely presume irreparable injury from the nature of the business and the breach of the covenant. Appellant's Brief at 20. Appellant's conclusion ignores, however, the following portion of the *Sling Testing* opinion which is quoted by the *New Castle* Court:

The covenant seeks to prevent more than just the sales that might result by the prohibited contact but also the covenant is designed to prevent a disturbance in the relationship that has been established between appellees and their accounts through prior dealings. It is the possible consequences of this unwarranted interference with customer relationships that is unascertainable and not capable of being fully compensated by money damages. It is for this reason … that where a covenant

*(Footnote Continued Next Page)*

- 8 -

Here, TYCO has a significant interest in protecting its customer base, and in protecting the confidentiality of its business and pricing information. [Appellant] has already visited some of TYCO's customers with Reliable employees. This could certainly lead to harm to TYCO were these customers, some of whom have become friends of [Appellant], to give business to Reliable, rather than TYCO. The facts in this case lead to the conclusion that the threat of continuous violation of the [NCA] constitutes immediate and irreparable harm to TYCO.

TCO at 7-9.

In response to Appellant's assertion that the two-year non-solicitation restriction set forth in the 2015 Agreement is broader than necessary to protect TYCO's interests, we note that this covenant is governed by New

_(Footnote Continued)_ ————————

of this type meets the test of reasonableness, it is *prima facie* enforceable in equity.

**New Castle**, 392 A.2d at 1386 (quoting **Sling Testing**, 369 A.2d at 1167).

The **New Castle** Court further explained that **Sling Testing** does not conflict with the threshold evidentiary requirement that actual proof of irreparable harm must be met before granting a preliminary injunction; rather, **Sling Testing** supplements this threshold requirement in those cases where the plaintiff's proof of injury "foreshadows the disruption of established business relations which would result in incalculable damage should the competition continue in violation of the covenant." **Id.** at 1387. Moreover, **New Castle** is clearly distinguishable from the instant case, as it is a non-compete case involving a specialist physician in an under-served rural area, rather than a salesman. **See id**. (stating "[t]his is quite unlike the normal commercial situation in which there are only a limited number of prospective clients and the alleged breach significantly affects the share of the former employer. Here, the potential pool of clients far exceeds the appellee's ability to serve them. Under these circumstances it is difficult to find any irreparable injury wrought upon the appellee by the appellant").

Jersey law.[3]   Appellant, however, erroneously cites to inapposite Pennsylvania case law, in an attempt to support his challenge to the geographic scope of this restriction.[4]

"New Jersey courts recognize protecting confidential business and protecting customer relationships as legitimate employer interests.  In cases where the employer's interests are strong, such as cases involving trade secrets or confidential information, a court will enforce a restrictive covenant."  *Trico Equipment, Inc. v. Manor*, No. 08-5561, 2009 WL 1687391, at *7 (D.N.J. June 15, 2009).  Similar to Pennsylvania courts, "[a]s to undue hardship, [New Jersey] courts will consider 'the nature of the profession, the duration of the restriction, the geographic area of the restriction and the type of restriction.'"  *Id.* (quoting *Maw v. Advanced Clinical Communications, Inc.*, 359 N.J. Super. 420, 820 A.2d 105, 115 (N.J. Super. Ct. App. Div. 2003)).  A two-year period has been found to be

---

[3] In the "Governing Law" section of the 2015 Agreement, the parties expressly agreed that the contract "shall be governed by the laws of the state of New Jersey without reference to principles of conflicts of laws that would direct the application of the law of any other jurisdiction."  *See* 2015 Agreement.  "Choice of law provisions in contracts will generally be given effect."  *Smith v. Commonwealth Nat. Bank*, 557 A.2d 775, 777 (Pa. Super. 1989).

[4] Even if Pennsylvania law applied, a two-year restraint on solicitation of former customers has been held to be reasonable and enforceable*.  See Worldwide Auditing Services, Inc. v. Richter*, 587 A.2d 772, 776 (Pa. Super. 1991) (upholding covenant restricting solicitation of Worldwide's former customers "wherever located" for a period of two years).

reasonable for both non-compete and non-solicitation provisions. ***Id.***[5] For the foregoing reasons, we conclude that "apparently reasonable grounds" existed for the injunctive relief entered by the trial court.

Finally, Appellant claims that the trial court abused its discretion by ordering that the periods of restriction imposed by the injunction run from the date of the order, rather than from the date of Appellant's resignation. Appellant's Brief at 35. Again, we deem Appellant's claim to be without merit. The trial court's actions were entirely appropriate, considering

---

[5] In ***Trico***, the district court upheld a non-solicitation provision, which barred the former employee from soliciting "any entity that was a customer, supplier, contractor, or subcontractor of Trico, for two years," reasoning:

> In ***A.T. Hudson & Co. v. Donovan***, 216 N.J. Super. 426, 524 A.2d 412, 416 (N.J. Super. Ct. App. Div. 1987), the New Jersey court upheld a similar provision. While New Jersey courts seem to require geographic limits for non-compete clauses, geographic limitations do not appear necessary for non-solicitation provisions. ***See Platinum Management, Inc. v. Dahms***, 285 N.J. Super. 274, 666 A.2d 1028, 1040 (N.J. Super. Ct. Law Div. 1995); ***Mailman, Ross, Toyes & Shapiro v. Edelson***, 183 N.J. Super. 434, 444 A.2d 75, 79 (N.J. Super. Ct. Ch. Div. 1982) ("To impose a geographical limitation on a covenant which seeks to protect an established clientele instead of an area of non-competition would not make the burden imposed on the employee by a covenant 'reasonable' but would merely mandate an unwarranted change in the nature of the interest protected.")

***Trico***, 2009 WL 1687391, at *7.

Appellant failed to abide by the terms of the non-compete agreements after his resignation from TYCO.[6]

Although not binding on this Court, we are persuaded by **Jackson Hewitt Inc. v. Childress**, 2008 WL 834386, at *10-11 (D.N.J. March 27, 2008), in which a former franchisee was enjoined from competing with the former franchisor for a period of twenty-four (24) months, beginning from the date of the former franchisee's compliance with the non-compete covenant, rather than the date that it abandoned the franchise. The **Jackson Hewitt** court reasoned that the extension of the restrictive period was justified, as the defendant would otherwise "wrongfully benefit from his refusal to comply with his contractual obligations." **Id.** at *11.

Appellant cites, to no avail, two Pennsylvania cases in which the Courts refused to enforce a restrictive covenant by means of an injunction. **See Davis v. Buckham**, 421 A.2d 427 (Pa. Super. 1980); **see also Hayes v. Altman**, 266 A.2d 269, 271 (Pa. 1970) (holding "[a]n injunction will not be granted to enforce a restrictive covenant when the restrictive period has by its terms expired"). Both of those cases are distinguishable from the present matter, as in each of those cases, the court emphasized the fact that

---

[6] As stated *supra*, the trial court found that Appellant breached the NCA and the 2015 Agreement by working for Reliable and by making calls, while working for Reliable, to TYCO customers located in his former TYCO sales territory. TCO at 7.

the period of the restrictive covenant had expired.[7]   We determine **Davis** and **Hayes** do not control in this case, where the restrictive covenants had not yet expired at the time the injunction was ordered.

Moreover, the **Hayes** Court indicated that fraud or unnecessary delay by the appellant may serve as a basis for an extension.  **Hayes**, 266 A.2d at 272.   The record in the instant matter reveals that Appellant has caused unnecessary delay in the litigation of the validity and enforceability of the non-compete and non-solicitation agreements.[8]   Appellant should not be permitted to benefit from such actions and to avoid the restrictions set forth in the covenants to which he knowingly agreed.  It seems only appropriate that the trial court refused to credit Appellant for time that had passed since his resignation from TYCO, as such time was spent in non-compliance. Equity demands that the period of restrictions runs from the date of the preliminary injunction order.

Accordingly, we conclude that the trial court did not err in granting TYCO's petition for a preliminary injunction against Appellant, and we affirm the November 21, 2016 order.

---

[7] The **Davis** court acknowledged that a case *may* arise where a court would be justified in extending a period of a restrictive covenant, but that this was not that case, due to the fact that the restrictive period had expired.  **Davis**, 421 A.2d at 431.

[8] The trial court granted a motion for sanctions against Appellant on January 12, 2017, for failure to produce court-ordered discovery documents.

- 13 -

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2017